UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| ZDENKA WILCOX, | § | Civil Action No. _____ |
| | § | |
| **Plaintiff**, | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF SOUTHLAKE, TEXAS; | § | |
| JOHN/JANE DOES 1–5, | § | |
| in their individual and official capacities, | § | |
| | § | |
| **Defendants**. | § | |
| | § | |
| | § | |
| _____ | § | |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**I. INTRODUCTION**

1.  This civil-rights action challenges the City of Southlake's creation, maintenance, and ratification of materially false and stigmatizing police records that altered Plaintiff's legal status and inflicted ongoing harm without constitutionally adequate process.

2.  Plaintiff is a reporting victim of domestic violence who sought law-enforcement assistance from the Southlake Police Department ("SLPD"). Instead of receiving neutral and accurate

1

documentation of her report, Plaintiff was subjected to the generation and continued maintenance of official police records containing material inaccuracies that misrepresented her report and portrayed her as unreliable.

3. These false and stigmatizing records were created and maintained without notice to Plaintiff, without an opportunity to be heard, and without any meaningful avenue for correction. They were later relied upon by third parties and governmental actors, foreseeably causing reputational harm, legal prejudice, and ongoing risk of future injury.

4. After Plaintiff provided formal written notice to City officials and final policymakers identifying these constitutional violations and requesting corrective action, the City affirmatively chose inaction. No investigation was opened, no records were corrected, and no remedial process was provided.

5. Plaintiff does not assert a freestanding right to prosecution or to any particular investigative outcome. Rather, she challenges Defendants 'unconstitutional maintenance and ratification of false official records and their denial of procedural safeguards required by the Fourteenth Amendment.

6. By ratifying the continued use of false and stigmatizing police records after receiving actual notice of their constitutional deficiencies, the City rendered this misconduct official municipal policy, actionable under 42 U.S.C. § 1983.

## II. JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

8.  Jurisdiction is proper under 28 U.S.C. § 1343(a)(3)–(4).

9.  Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202.

10. Venue is proper under 28 U.S.C. § 1391(b).

## III. PARTIES

11. Plaintiff. Plaintiff Zdenka Wilcox is a resident of Southlake, Texas.

12. Municipal Defendant. Defendant City of Southlake, Texas is a municipal corporation responsible for the policies, customs, training, supervision, and recordkeeping practices of the Southlake Police Department.

13. Doe Defendants. Defendants John/Jane Does 1–5 are officers, supervisors, investigators, or policymakers who personally participated in, approved, failed to correct, or ratified the conduct alleged herein.

14. The identities of the Doe Defendants are presently unknown to Plaintiff and are uniquely within Defendants 'control. Plaintiff includes Doe Defendants solely to preserve claims pending discovery.

15. At all relevant times, Defendants acted under color of state law.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Report and Creation of False Records

16. On or about March 19, 2024, Plaintiff reported domestic violence to the Southlake Police Department and provided supporting documentation.

17. SLPD generated an official incident report and related records that contained material inaccuracies, including incorrect incident dates that Plaintiff did not provide and that materially altered the meaning and credibility of her report.

18. These inaccuracies were incorporated into official police records associated with case number SPR24000349.

19. The false records did not merely misstate facts. They reclassified Plaintiff's legal standing in official proceedings from that of a reporting victim entitled to neutral law-enforcement treatment into that of an unreliable or false reporter, exposing her to adverse legal consequences and stripping her of procedural protections ordinarily afforded to victims of domestic violence.

20. The creation and maintenance of these materially false records were undertaken intentionally or, at a minimum, with deliberate indifference to their falsity and to the obvious constitutional consequences of embedding such inaccuracies in official police files.

**B. Maintenance of False and Stigmatizing Records**

21. The false records mischaracterized Plaintiff's report and portrayed her as unreliable or suspect.

22. These were not trivial clerical errors. The inaccuracies altered Plaintiff's legal position, were later relied upon by third parties, and foreseeably caused reputational and legal harm.

23. Plaintiff was not notified of the mischaracterizations and was given no meaningful opportunity to challenge or correct them.

24. Because police incident reports are treated as authoritative by courts and prosecutors, Defendants 'maintenance of materially false records foreseeably materially impaired the likelihood of neutral judicial and prosecutorial reliance on Plaintiff's account and instead institutionalized a false narrative adverse to her legal interests.

## C. Denial of Procedural Safeguards

25. Plaintiff repeatedly sought clarification and correction of the false records.

26. Defendants denied her access to any meaningful process, explanation, or remedial mechanism.

27. No pre-deprivation or post-deprivation process was provided. Once the City, through its officials, officially adopted and continued to maintain materially false and stigmatizing police records, no constitutionally adequate procedure existed by which Plaintiff could obtain neutral review or prevent their ongoing official use. The deprivation therefore flowed from official policy and ratified conduct rather than from a random and unauthorized act.

28. As a result, Plaintiff had no mechanism to prevent the continued official use of false records that altered her legal status and imposed ongoing legal burdens.

## D. Official Use of False Records in Judicial Proceedings

29. The false and uncorrected police records were affirmatively relied upon by government actors in judicial proceedings. In a custody hearing in Tarrant County, an SLPD detective appeared as a witness for Plaintiff's abuser and testified, based on the erroneous police records, that Plaintiff's domestic-violence reports were false.

30. This official use of the records directly impaired Plaintiff's credibility in court, imposed tangible legal burdens affecting her parental rights, and reinforced the false narrative embedded in the City's records.

31. Plaintiff has also been forced to defend herself, and continues to defend herself, in a pending defamation action in Tarrant County arising from the same false police records. In those proceedings, the records have been invoked as official confirmation that Plaintiff fabricated her domestic-violence reports.

32. Absent the City's ratification and continued official maintenance of the false records, third parties and governmental actors would not have relied upon them as authoritative, nor would they have carried institutional weight in judicial proceedings.

33. These harms flow directly from Defendants 'official creation, maintenance, and ratification of false records—not from private defamation or interpersonal dispute.

**E. Post-Notice Ratification by Final Policymakers**

34. On January 30, 2026, Plaintiff, through counsel, sent formal written notice to the City of Southlake, its City Attorney, City Manager, and senior officials detailing the constitutional violations and requesting corrective action.

35. Despite possessing authority to intervene, investigate, and correct the records, no City official took action.

36. No records were amended. No investigation was initiated. No process was offered.

37. This deliberate inaction constituted ratification of the underlying misconduct.

## V. MUNICIPAL LIABILITY (MONELL)

38. The constitutional violations suffered by Plaintiff were caused by an official municipal policy, custom, and practice of the City of Southlake: the maintenance and ratification of materially false and stigmatizing police records without constitutionally adequate procedures for notice, review, or correction.

39. This policy consisted of the City's affirmative decision—made and ratified by final policymakers after receiving actual notice—to maintain and continue to rely upon official police records known to be materially false, without providing any mechanism for correction or neutral review.  The absence of any corrective mechanism, coupled with the City's uniform refusal to amend known false police records upon notice, reflects an institutional policy rather than an isolated mistake.

40. Supporting practices include:

    (a) Absence of procedures governing correction of inaccurate police records;

    (b) Inadequate training and supervision regarding record integrity;

    (c) Tolerance of false or misleading narratives in official records;

    (d) Deliberate indifference demonstrated by post-notice inaction; and

    (e) Deliberate refusal by final policymakers to implement or provide any post-notice corrective process for known false police records.

41. At all relevant times, the City Manager and Chief of Police exercised final policymaking authority with respect to police departmental policies, training, discipline, and the maintenance and correction of official police records.

42. Under Texas municipal law and the City's organizational structure, the Chief of Police exercises final authority over police record-keeping, investigative files, and departmental practices, and the City Manager possesses final authority to direct corrective action and remedial policy changes within the Police Department.

43. The City's policy and post-notice ratification were the moving force behind Plaintiff's injuries.

44. As a direct result of the City's refusal to correct the records after receiving actual notice of their falsity, the false narratives remained operative and continued to cause legal, reputational, and procedural injury to Plaintiff.

## VI. CLAIMS FOR RELIEF

45. COUNT I — Procedural Due Process

    (a) Defendants deprived Plaintiff of protected liberty interests, including the right not to be officially labeled as dishonest or unreliable in government records in a manner that imposes a tangible legal burden.

    (b) The maintenance and continued use of false and stigmatizing records, coupled with denial of corrective process, satisfies the stigma-plus doctrine.

    (c)  The resulting injuries include alteration of Plaintiff's legal status, impairment of her credibility in judicial proceedings, and exposure to ongoing legal harm caused by official reliance on false records.

46. COUNT II — Municipal Liability (Monell)

    (a)  The City of Southlake is liable for the constitutional violations described above.

## VII. INJUNCTIVE AND DECLARATORY RELIEF

47. False and stigmatizing police records concerning Plaintiff remain in effect.

48. Defendants continue to maintain and rely upon these records, creating a real and immediate risk of future harm, including reliance by courts, law-enforcement agencies, and other governmental actors.

49. Monetary damages alone cannot remedy this ongoing constitutional injury.

50. Plaintiff does not seek to enjoin or interfere with any ongoing state judicial proceedings but seeks prospective relief solely to correct and prevent continued official use of false police records.

51. The continued maintenance and official availability of these records constitutes an ongoing constitutional violation.

## VIII. PRAYER FOR RELIEF

Plaintiff respectfully requests:

    A. Compensatory damages;

    B. Punitive damages against individual Defendants (excluding the City of Southlake);

    C. Declaratory relief;

    D. Injunctive relief requiring correction of false records and implementation of

constitutionally adequate procedures;

E. Attorneys 'fees under 42 U.S.C. § 1988;

F. Costs and interest;

G. Such other relief as the Court deems just.

## IX. JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

**/s/ Brian D. Wilcox**
Brian D. Wilcox
State Bar No. CA 244096
Brian D. Wilcox Law, PLLC
Southlake, Texas 76092
Telephone: 949-533-7530
Email: Brian@BrianDWilcoxLaw.com

ATTORNEY FOR PLAINTIFF