**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ZDENKA WILCOX** | § | |
| | § | |
| **v.** | § | **CASE NO.  4:26-cv-147** |
| | § | |
| **CITY OF SOUTHLAKE, TEXAS, et al.** | § | |

**CITY OF SOUTHLAKE, TEXAS' FIRST AMENDED**
<u>**MOTION TO DISMISS AND BRIEF IN SUPPORT**</u>

**ROBERT J. DAVIS**
State Bar No. 05543500
**KYLE THOMAS BARRY**
State Bar No. 24122284
**MATTHEWS,  SHIELS, KNOTT,**
**EDEN, DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)
bdavis@mssattorneys.com
kbarry@mssattorneys.com

**ATTORNEYS FOR DEFENDANT**
**CITY OF SOUTHLAKE, TEXAS**

**TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

II.   STANDARD FOR RULE 12(b)(6) MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  PERTINENT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-8

IV.   GROUNDS FOR DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    PLAINTIFF'S FIRST AMENDED COMPLAINT FAILS TO STATE
      ANY PLAUSIBLE CLAIMS AGAINST THE CITY OF SOUTHLAKE . . . . . . . . .  8-19

      A.    Plaintiff has not adequately plead nor could she establish under
            these facts any Section 1983 and *Monell* liability against the City . . . . . . . . . . 9-19

            1.    No violation of any constitutional rights . . . . . . . . . . . . . . . . . . . . . . . . 9-12

            2.    Plaintiff cannot demonstrate "Stigma-plus" Due Process claim . . . . . . 12-15

            3.    Applicable law regarding *Monell* liability . . . . . . . . . . . . . . . . . . . . . . 15-17

            4.    Plaintiff fails to sufficiently plead any plausible *Monell* claim . . . . . . . . 17-19

            5.    City cannot be held vicariously liable herein as matter of law . . . . . . . . . 19

      B.    Plaintiff has failed to plead plausible claims for failure to train or supervise . . . 19-21

      C.    Plaintiff has failed to plead any plausible claims for Injunctive or
            Declaratory Judgment relief against the City . . . . . . . . . . . . . . . . . . . . . . . . . 21-22

      D.    Plaintiff's claims against the "Doe" Defendants should be dismissed . . . . . . . .  22

      E.    Court can and should also dismiss the unserved Defendants because
            some grounds for dismissal of City also apply to these unserved Defendants . . . 23

VI.   PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

      CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

## TABLE OF AUTHORITIES

CASES:

*Alexander v. Tangipahoa Parish Sheriff Dept*.,
  2006 U.S. Dist. LEXIS 95292, 2006 WL 4017825 (E.D. La. 2006) . . . . . . . . . . . . . . 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ballard v. Hedwig Vill. Police Dep't*,
  408 F. App'x 844 (5th Cir. 2011)(per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554  (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Bellard v. Gautreaux,*
  675 F.3d 454 (5th Cir.2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Benavides v. County of Wilson*,
  955 F.2d 968 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Bledsoe v. City of Horn Lake, Miss.*,
  449 F.3d 650 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Bd. of Cnty. Comm'rs v. Brown,*
  520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) . . . . . . . . . . . . . . . . . . . 17

*Bennett v. City of Slidell*,
  728 F.2d 762  (5th Cir. 1984) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Blackburn v. City of Marshall*,
  42 F.3d 925 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Bodzin v. City of Dallas,*
  768 F.2d 722 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bolton v. City of Dallas*,
  541 F.3d 545, (5th Cir. 2008) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Burge v. Parish of St. Tammany*,
  187 F.3d 452  (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Carson v. Fed. Nat'l Mortg. Ass'n,*
  2012 U.S. Dist. LEXIS 204112, 2012 WL 13029757 (W.D. Tex. Jan. 26, 2012) . . . . . 21

*City of Canton, Ohio v. Harris*,
  489 U.S. 378,109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) . . . . . . . . . . . . . . . . . . . . . 20

*City of Los Angeles v. Heller*,
   475 U.S. 796 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*City of Oklahoma City v. Tuttle*,
   471 U.S. 808, 820, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985) . . . . . . . . . . . . . . . . . . . . 18

*City of St. Louis v. Praprotnik*,
   485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Edison v. Smith Cnty.*,
   2024 WL 1202884, 2024 U.S. Dist. LEXIS 50450 (E.D. Tex. Feb. 20, 2024) . . . . . . . . . 10

*Farber v. City of Gainesville*,
   2026 WL 319782, 2026 U.S. Dist. LEXIS 26437 (E.D. Tex Feb. 2, 2026) . . . . . . . . . . 22

*Gates v. Texas Dep't of Protective & Regul. Servs.*,
   537 F.3d 404 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Harris vs. City of Pagedale*,
   821 F.2d 499 (8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jarrett v. Twp. of Bensalem*,
   312 F. App'x 505 (3rd Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Landrigan v. City of Warwick*,
   628 F.2d 736 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Lewis v. Lynn*,
   236 F.3d 766 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Jett v. Dall. Indep. Sch. Dist.*,
   7 F.3d 1241 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Luera v. Kleberg County, Tex*,
   460 Fed. Appx. 447 (5th Cir 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*McCarty v. Zapata Cnty.*,
   243 F. App'x 792 (5th Cir. 2007)(unpublished) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Melancon v. Walsh*,
   2025 WL 42977, 2025 U.S. App. LEXIS 2896 (5th Cir. Feb. 7, 2025) . . . . . . . . . . . . . 10

*Monell v. Dep't of Soc. Servs. of N.Y.*,
   436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . 15, 19

*Morrison v. Spinnaker Ins. Co.*,
   Civil Action No. 4:23-cv-324, 2025 U.S. Dist. LEXIS 166347 (E.D. Tex. 2025) . . . . . 21

*Olabisiomotosho v. City of Houston*,
185 F.3d 521 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*O'Quinn v. Manuel*,
773 F.2d 605 (5th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Paul v. Davis*,
424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976) . . . . . . . . . . . . . . . . . . . . . . . 13

*Pembaur vs. City of Cincinnati*,
106 S.Ct. 1292, 1298 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Peña v. City of Rio Grande City*,
879 F.3d 613 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pineda v. City of Houston*,
291 F.3d 325 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17, 18,19

*Perricone v. City of Mineral Wells Tex.*,
No. 4:19-CV-00992-O, 2023 U.S. Dist. LEXIS 201425, 2023 WL 7420256,
(N.D. Tex. Nov. 8, 2023), appeal dism'd, No. 23-11232, 2024 U.S. App. LEXIS 5353,
2024 WL 2880629 (5th Cir. Mar. 5, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Price v. Roark*,
256 F.3d 364 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Reitz v. City of Abilene*,
No. 1:16-CV-0181-BL, 2017 WL 3046881, 2017 U.S. Dist. LEXIS 110673
(N.D. Tex. May 25, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rivera v. Hous. Indep. Sch. Dist.*,
349 F.3d 244 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rich v. Palko*,
920 F.3d 288 (5th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Saucier v. Katz*,
533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Schilling v. Rogers*,
363 U.S. 666, 80 S. Ct. 1288, 4 L. Ed. 2d 1478 (1960) . . . . . . . . . . . . . . . . . . . . . . . 22

*Smith v. Brenoettsy*,
158 F.3d 908 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Smith v. Patri*,
   99 Fed. App'x 497 (5th Cir. 2004)(per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Snyder v. Trepagnier*,
   142 F.3d 791 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Thompkins v. Belt*,
   828 F.2d 298 (5[th]Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Thompson v. Upshur County, TX*,
   245 F.3d 447 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Trammell v. Fruge*,
   868 F.3d 332 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Valle v. City of Houston*,
   613 F.3d 536 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15,17

*Webster v. City of Houston*,
   735 F.2d 838 (5th Cir. 1984) (en banc) (per curiam) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wells v. Hico Indep. Sch. Dist.*,
   736 F.2d 243 (5th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*White v. City of Arlington*,
   No. 4:22-cv-00886-O, 2023 WL 4188048, 2023 U.S. Dist. LEXIS 109453,
   (N.D. Tex. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*White v. Thomas*,
   660 F.2d 680 (5th Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Zarnow v. City of Wichita Falls*,
   614 F.3d 161 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**FIRST AMENDED MOTION TO DISMISS AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **CITY OF SOUTHLAKE, TEXAS**, one of ten Defendants,[1] and files their

FIRST AMENDED MOTION TO DISMISS AND BRIEF IN SUPPORT, as follows:

## I.
## INTRODUCTION

Faced with the City's MOTION TO DISMISS [ECF No. 6], Plaintiff has now filed her FIRST

AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF [ECF No.8], adding five individuals[2]

and interjecting more but still legally insignificant and wholly conclusory contentions. But her FIRST

AMENDED COMPLAINT fares no better than its predecessor. Plaintiff similarly decries in the

Introduction of her FIRST AMENDED COMPLAINT that:

> "This civil-rights action arises from Defendants' creation, maintenance, and
> continued official use of materially inaccurate police records concerning Plaintiff's
> report of domestic violence, combined with Defendants' refusal to provide any
> meaningful process by which those records could be reviewed, corrected, or
> challenged."[3]

Culled from the re-worked verbiage, the gist of Plaintiff's FIRST AMENDED COMPLAINT remains that

she begrudges her credibility characterization in the Police Department Report and related records.

In other words, Plaintiff does not like that the Police Report, according to her, contained "material

inaccuracies that altered the meaning and reliability of Plaintiff's reported statements.[4]

---

[1]In addition to the City, Plaintiff now purports to sue five individuals as well as "John/Jane Does 1-5"; see, Plaintiff's FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF (hereinafter "Plaintiff's FIRST AMENDED COMPLAINT")[ECF No. 8], paragraphs III(C), p. 2-8

[2]This includes Officer Whitman, Detective Roberson, Captain Henninger, Chief Casey, and Records Manager Blum. See, Plaintiff's AMENDED COMPLAINT [ECF No. 8], paragraphs III(C), p. 2-8

[3] Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8] Introduction paragraph I(1), p. 1

[4] Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph I(10), p. 3

Plaintiff sues the City of Southlake, five individual Defendants, and five unnamed "Doe" Officer Defendants,[5] bringing claims under 42 U.S.C. Section1983 and *Monell* for an alleged Procedural Due Process claim.  Buried in her *Monell* claim is also a terse allegation that the City failed to adequately train and supervise its officers and personnel. She also seeks injunctive and declaratory relief.  Plaintiff's claims - against the City and the ten unserved Defendants - should all be dismissed as detailed more fully below.

## II.
## STANDARD FOR RULE 12(b)(6) MOTION

The standards to survive a motion to dismiss under FED. R. CIV. P. 12(b)(6) are well established and known to and frequently cited by this Court, i.e. *White v. City of Arlington*, No. 4:22-cv-00886-O, 2023 WL 4188048, 2023 U.S. Dist. LEXIS 109453, at *4-5 (N.D. Tex. 2023), and same is incorporated herein by reference, so they will not be repeated here.

## III.
## PERTINENT FACTUAL BACKGROUND

For purposes of dismissal under FED. R. CIV. P. 12(b)(6), the following are pertinent facts gleaned from Plaintiff's lawsuit.[6]

---

[5]She identifies five "Doe Defendants" and specifically avers "Defendants John/Jane Does 1-5 are officers, supervisors, investigators, records personnel, legal advisors, or policymakers employed by or acting on behalf of the City who participated in the creation, review, approval, maintenance, dissemination, or failure to correct the materially inaccurate records described herein.",  See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(D)(41), p. 8

[6]Because this motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), the factual allegations in Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8] are taken as true but not necessarily the conclusory statements and bald assertions. However, nothing contained herein is intended to serve as a waiver of Defendant's right to challenge the veracity of same at trial or in the presentation of a further dispositive motions, if same even necessary. By filing this FIRST AMENDED MOTION TO DISMISS, the City Southlake is not stipulating that the allegations of Plaintiff are true nor in any way acquiescing in the allegations contained in the Plaintiff's FIRST AMENDED COMPLAINT. Rather, under the standards set forth above, the City contends that even if Plaintiff's sparse and specious allegations were factual, which they vehemently deny, the City would still be entitled to dismissal as a matter of law.

Plaintiff Zdenka Wilcox is a resident of the City of Southlake, Texas.[7] She was a reporting party in a City of Southlake Police Report regarding alleged domestic violence.[8]

The City of Southlake, Texas, is a governmental entity, specifically a home rule municipality, located in Tarrant and Denton Counties, Texas.[9] As part of its governmental functions, the City operates a Police Department which provides various public safety and law enforcement activities, including investigation and prosecution of crime.[10] Plaintiff includes as new "Individual Defendants" Officer Braeden Whitman, a "Line Officer Defendant;"[11] Detective Roberson, an "Investigative Defendant";[12] Captain Jason Henninger a "Supervisory Defendant";[13] Chief Ashley Casey a "Policymaker Defendant";[14] and Sarah Blum a "Records/Administrative Defendant."[15] Plaintiff again identifies five "Doe" Defendants who she now describes as "officers, supervisors, investigators, records personnel, legal advisors, or policymakers employed by or acting on behalf of the City who participated in the creation, review, approval, maintenance, dissemination, or failure to correct the materially inaccurate records described herein." [16]

---

[7]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(A), p. 5

[8]See, i.e., Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(45), p. 9

[9]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(B)(20), p. 5; See also, https://www.cityofsouthlake.com/

[10]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(B)(21), p. 5; See also, https://www.cityofsouthlake.com/1378/Police-Department

[11]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(C)(26)-(27), p. 6

[12]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(C)(28)-(29), p. 6

[13]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(C)(30)-(32), p. 6-7

[14]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(C)(33)-(36), p. 7

[15]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(C)(37)-(40), p. 7-8

[16]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph III(D)(41), p. 8

Plaintiff's revamped version of her "Factual Background" is set out in fifty eight (58) paragraphs in her PLAINTIFF'S FIRST AMENDED COMPLAINT.[17]  Culled from these putative facts, mostly self-serving conclusions merely masquerading as "facts", is essentially that Plaintiff still bemoans her portrayal in a Southlake Police Department Report and the associated Police records, and specifically, alleged inaccuracies associated with case number SPR24000349.[18]

The Police Report in question was created on March 19, 2024, when "Plaintiff reported domestic violence to the Southlake Police Department."[19]  She contends that during her initial interaction with Officer Whitman she "provided information and supporting documentation concerning the reported incidents."[20]  She discusses "photographs depicting physical injuries consistent with domestic violence" but notes that the "photographs were printed images and did not contain embedded metadata or electronically generated timestamps."[21]  Plaintiff then relays her version of the resulting interactions with Southlake Police and her purported attempts to correct perceived problems with the Report.[22]  She also begrudges that the Police Department had what she headnotes as a "One-sided Engagement with Juan Duran and False-Report Theory."[23]

Plaintiff's ongoing litany of woes about the Police Report and the associated Police records include the following:

---

[17]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraphs IV(A)-(G), p. 9-17

[18]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(45)-(46), p. 9

[19]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(45), p. 9

[20]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(47), p. 9; see also paragraphs IV(B)(54)-(60)

[21]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(B)(55), p. 10

[22]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraphs IV(A)-(G), p. 9-17

[23]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(C)(63)-(71), p. 11-12

\*      "The official records generated from this interaction included specific incident dates that were not provided by Plaintiff and were not derived from any statements made by Plaintiff during the report";[24]

\*      "The photographs documented physical injuries consistent with reported domestic violence, including visible bruising and discoloration, which exhibited characteristics indicating that the injuries were not contemporaneous with the dates later attributed to them in the official records";[25]

\*      "Despite the absence of any identified source for those dates and the inconsistency with the observable condition of the injuries, the dates were incorporated into the official report as factual assertions, thereby altering the substance, context, and apparent credibility of Plaintiff's allegations;"[26]

\*      "Body-worn camera footage of the initial report reflects that Plaintiff did not provide specific incident dates during the interaction, and no such dates were stated by Plaintiff at that time";[27]

\*      "The inclusion of these dates in the official records created a material discrepancy between Plaintiff's actual statements and the contents of the official report";[28] and

\*      "This discrepancy was material because it directly affected how Plaintiff's allegations were interpreted, evaluated, and relied upon by law enforcement and other decision-makers" [29]

Plaintiff avers that she "continued to provide information, clarification, and supporting materials to law enforcement in an effort to ensure that her report was accurately understood and properly evaluated"[30] but that "Despite these efforts, Plaintiff's explanations and supporting evidence were not incorporated into any meaningful correction, clarification, or annotation of the official

---

[24]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(48), p. 9

[25]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(49), p. 9

[26]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(50), p. 9

[27]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(51), p. 9

[28]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(52), p. 9

[29]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(A)(53), p. 10

[30]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(B)(60), p. 10

records, and Plaintiff was not provided any mechanism or process—formal or informal—by which she could seek review, correction, or challenge of the inaccuracies in those records."[31]

Plaintiff continues, complaining that:

> At the same time, Plaintiff was not provided any meaningful opportunity to respond to, rebut, or correct allegations that her report was false, and was not contacted regarding such allegations. Plaintiff was not provided any mechanism to respond to or challenge the information being relied upon in any escalation of the matter to prosecutorial authorities, nor was she afforded any opportunity to address or participate in decisions affecting the evaluation of her report, including the use of inaccurate dates and the conclusions drawn from them.[32]

This, according to Plaintiff, resulted in her being "excluded from meaningful participation in the evaluation of her own report, while adverse determinations regarding her credibility were formed, adopted, and maintained based on inaccurate information contained in official records."[33] Continuing, she contends that she "repeatedly sought clarification, review, and and correction of the police report and associated records"[34] noting that the City escalated the situation when it "submitted or referred the matter to the Tarrant County District Attorney's Office for potential criminal charges related to alleged false reporting based on the materially inaccurate records described herein."[35] Plaintiff again narrates her purported requests for clarification was "directed to multiple levels of authority within the City, including supervisory personnel, command staff, the Chief of Police, and City officials with authority to direct corrective action, yet no meaningful review, correction, or annotation of the records occurred."[36]

---

[31]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(B)(62), p. 11

[32]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(C)(68), p. 11

[33]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(C)(70), p. 12

[34]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(D)(72), p. 12

[35]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(D)(73), p. 12

[36]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(D)(74), p. 13

These allegedly "materially inaccurate records" were, according to Plaintiff, "relied upon in judicial proceedings in Tarrant County, Texas, including proceedings affecting Plaintiff's parental rights and related legal interests. The records were used as authoritative government accounts in those proceedings."[37] She alleges, for example, that "In those proceedings, Southlake Police Department Detective Roberson relied on the materially inaccurate records and provided testimony based on those records in a manner that reflected or reinforced the conclusion that Plaintiff's domestic-violence reports were false or not credible." Similarly, she writes that "The same police records have also been invoked in ongoing civil litigation in Tarrant County, Texas, where they are used as purported official confirmation that Plaintiff fabricated her report, requiring Plaintiff to expend significant financial resources to defend against those claims and exposing her to continuing legal and evidentiary burdens."[38]

Concerning the contentions she headnotes as "Notice To City Officials and Ratification", Plaintiff writes "On or about January 30, 2026, Plaintiff, through counsel, provided formal written notice to the City of Southlake, its City Attorney, City Manager, and senior officials".[39] This notice "identified the alleged inaccuracies in the police records, the resulting legal harm, and the need for corrective action."[40] However, according to Plaintiff, "Despite receiving this notice, no records were corrected, no investigation was initiated, and no meaningful remedial process was provided. The records remained unchanged and continued to be maintained in official files available for use and

---

[37]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(E)(81), p. 14

[38]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(E)(85), p. 15; see also, Paragraph IV(F)(96), p. 16. Presumably this is the Defamation case previously referenced in her ORIGINAL COMPLAINT. See, Plaintiff's COMPLAINT [ECF No. 1], paragraph IV(D)(31), p. 6

[39]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(F)(91), p. 15

[40]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(F)(92), p. 15

reliance by law enforcement, prosecutors, courts, and other governmental actors."[41] Plaintiff further describes that she also contacted City Councilmember Kathy Talley about her [Plaintiff's] concerns but there was no response.[42]  Finally, the Plaintiff's narrative under "Policy Environment" are not actual facts, but rather, her own self-serving contentions about the City.[43]

## IV.
## GROUNDS FOR RELIEF

The City of Southlake requests that the Court decide the following issues presented in its FIRST AMENDED MOTION TO DISMISS:

1. Whether Plaintiff has plead any plausible *Monell* or Fourteenth Amendment Due Process claims against the City of Southlake, particularly Due Process claims founded on the Stigma-plus doctrine;

2. Whether Plaintiff has plead any plausible Failure to Train/Supervise claims;

3. Whether Plaintiff has plead any plausible claims for Injunctive or Declaratory Judgment relief;

4. Whether Plaintiff's claims against the "Doe" Defendants should be dismissed; and

5. Whether Plaintiff's claims against the five unserved Individual Defendants should be dismissed.

## V.
## PLAINTIFF'S   COMPLAINT FAILS TO STATE ANY
## PLAUSIBLE CLAIMS AGAINST THE CITY OF SOUTHLAKE

Plaintiff proclaims that "This civil-rights action arises from Defendants' creation, maintenance, and continued official use of materially inaccurate police records concerning Plaintiff's report of domestic violence, combined with Defendants' refusal to provide any meaningful process

---

[41]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(F)(93), p. 16

[42]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(F)(94), p. 16

[43]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraphs IV(G)(98)-103, p. 16-17

by which those records could be reviewed, corrected, or challenged.[44] The resulting discussion, however, is nothing more than conclusory assertions without meaningful analysis  or substantive discussion  of any relevant facts demonstrating any liability on the City's part. Put bluntly, even if factual allegations had been made against the City and legal claims properly plead, there are myriad reasons why Plaintiff cannot prevail herein. First as a threshold matter, there simply was no constitutional violation of any of the Plaintiff's secured rights. The fact that Plaintiff begrudges the reporting officers' characterization of her candor and credibility in a Police Report and associated records does not rise to the level of a constitutional violation. Second, Plaintiff's pleadings are wholly deficient, for a variety of reasons, regarding claims purportedly brought under *Monell* or as a Due Process violation under the Fourteenth Amendment under the "Stigma-plus doctrine".  Third, Plaintiff fails to plausibly plead a failure to train or supervise claim.  Likewise, Plaintiff cannot prevail on her claims seeking Injunctive or Declaratory relief.

    **A.**    **Plaintiff has not adequately plead nor could she establish under these facts any Section 1983 and *Monell* liability against the City**

    **1.**    **No violation of any constitutional rights**

Generally, to state a viable Section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution (2) that was clearly established at the time of their conduct. *See, Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)(citing *Saucier v. Katz*, 533 U.S. 194 (2001)). As a logical corollary, where there is no underlying constitutional violation, there can be no *Monell* liability, regardless of the government entity's policies or customs. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 529 (5th Cir. 1999); *Bodzin v. City of Dallas,* 768 F.2d 722, 726 (5th Cir. 1985)("The arrest of Bodzin was lawful as a

---

[44]See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8] introductory paragraph I(1), p. 1

matter of law, and he cannot recover under §1983 from any Defendant. We need not discuss good faith, municipal liability, or conspiracy."); *Luera v. Kleberg County, Tex*, 460 Fed. Appx. 447, 450 (5th Cir 2012)("Thus, given that [Officer] had probable cause to arrest [Plaintiff], there was no constitutional violation in this case; and [Officer] and Kleberg County were therefore entitled to summary judgment".)  More recently in *Melancon v. Walsh*, 2025 WL 42977, 2025 U.S. App. LEXIS 2896, at *16-17 (5th Cir. Feb. 7, 2025) the Fifth Circuit wrote: "As with Melancon's other claims, the district court correctly found that the "failure to plead the absence of probable cause—and, thereby,  state a constitutional violation"—defeats the *Monell* claim.

Plaintiff's case dies on this threshold issue.  The Fifth Circuit has plainly held that "there is no right to a completely accurate police report." *Smith v. Patri*, 99 Fed. App'x 497, 498 (5th Cir. 2004)(per curiam). See also *Rich v. Palko*, 920 F.3d 288, 297 (5th Cir. 2019)(affirming finding of qualified immunity where the plaintiff "fail[ed] to identify a single case suggesting that an individual has a right to be free from inaccuracies in an after-the-fact police report or that an inaccurate report serves as a sort of continuing constitutional violation...."). See also, *Edison v. Smith Cnty*., 2024 WL 1202884, 2024 U.S. Dist. LEXIS 50450, at *12 (E.D. Tex. Feb. 20, 2024), and *Alexander v. Tangipahoa Parish Sheriff Dept*., 2006 U.S. Dist. LEXIS 95292, 2006 WL 4017825, at *6 (E.D. La. 2006). Likewise, mere "disagreement with the information in the reports and with the officers' version of events is not sufficient to show that the officers falsified their reports." *Ballard v. Hedwig Vill. Police Dep't*, 408 F. App'x 844, 846 (5th Cir. 2011)(per curiam).

Other circuits have also recognized that false or inaccurate police reports do not pose a constitutional violation. See, e.g., *Jarrett v. Twp. of Bensalem*, 312 F. App'x 505, 507 (3rd Cir. 2009)("[T]he mere existence of an allegedly incorrect police report fails to implicate constitutional rights."); and *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980)("the mere filing of the

false police reports, by themselves and without more, did not create a right of action in damages under 42 U.S.C. § 1983").

Plaintiff argues that "Defendants, acting under color of state law, deprived Plaintiff of protected liberty interests without constitutionally adequate process, including Plaintiff's liberty interest in avoiding the State's use of materially inaccurate information in proceedings affecting her legal rights, parental interests, and risk of incarceration, as well as her ability to seek protection and legal recourse based on her reports of domestic violence."[45]  Continuing in this vein, she argues:

> The rights violated were clearly established at the time of Defendants' conduct, including the right not to be subjected to the State's knowing use of materially inaccurate or misleading information in proceedings affecting liberty interests, and the right to a meaningful opportunity to be heard at a meaningful time and in a meaningful manner to challenge such information, as reflected in long-standing due process principles prohibiting the use of materially false or misleading information by the State in adjudicative contexts.[46]

Plaintiff remains wrong.  As the foregoing discussion of the well-reasoned and robust consensus of case law regarding accuracy and completeness of Police Reports confirms, even if the Southlake Officers "intentionally misrepresented" facts in their Police Report (which Plaintiff has not demonstrated[47] and which the City vehemently disputes), such misrepresentation(s) would not constitute a violation of a clearly established right - especially since Plaintiff was not charged with any crime; she was, according to her, a "reporting victim of domestic violence who sought law-enforcement assistance."[48]  Plaintiff simply cannot meet her threshold burden to show a constitutional violation of any kind.  Even if the Southlake Police Report and associated records

---

[45]See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8] paragraph VI(104)(c), p. 18

[46]See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8] paragraph VI(104)(n), p. 20

[47]Notably, Plaintiff has substantially tempered the tenor of her allegations and no longer avers that there was any intentional misconduct on the part of any officers.

[48]Plaintiff's COMPLAINT [ECF No. 1), paragraph I(2), p. 1.

contain inaccurate or even false allegations against the Plaintiff, the mere filing of a false, misleading, or incomplete Police Report, without more, is not a Constitutional deprivation nor infringement upon a liberty interest, and thus, does not create a cause of action in damages under section 1983 being brought as a putative 14th Amendment Due Process claim.

Problematic, too, for Plaintiff, is that she had a viable remedy to challenge the alleged inaccurate Police Report - contact the Police Department and request appropriate correction, a path which Plaintiff claims she undertook. She asserts, for example, that "Plaintiff repeatedly sought clarification, review, and correction of the police report and associated records."[49]   The real issue for Plaintiff is not that she was deprived a purported "Liberty Interest" in accurate Police Records [a right which the City disputes exists under these facts], but rather, that she did not like the response that she received, i.e., a failure or refusal to change the Report.  She bemoans that "Plaintiff was informed during that prior conversation that the report had been amended to reflect her statements. However, when Plaintiff later obtained the records, she did not observe any such amendments."[50] Simply put, there was not a denial of the right to seek redress; it was the result which she begrudges.

> **2.    Plaintiff cannot demonstrate a plausible "Stigma-plus" Due Process claim**

Plaintiff's terse Stigma-plus allegations[51] are little more than generic legal jargon untethered to any particularized facts, and her formulaic and threadbare recitals cannot rise to the level of a constitutional claim or survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[49]See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(D)(72), p. 12

[50]See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph IV(D)(76), p. 13

[51]See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraphs VI(104)(a)-(p), p. 17-21. The phrase "stigma-plus doctrine" appears only once in the entirety of Plaintiff's FIRST AMENDED COMPLAINT, and even then, in only the most self-serving and cursory manner.  See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph VI(104)(h), p. 19 ("These harms constitute a deprivation of liberty interests sufficient to satisfy the stigma-plus doctrine")

Generally, the stigma-plus doctrine arises in the employment context, see, i.e. *Bellard v. Gautreaux,* 675 F.3d 454, 461 (5th Cir.2012)( "[a] public employee, even an at-will employee, has a constitutional right to notice and an opportunity to be heard when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'"); see also, *Perricone v. City of Mineral Wells Tex.*, No. 4:19-CV-00992-O, 2023 U.S. Dist. LEXIS 201425, 2023 WL 7420256, at *1 (N.D. Tex. Nov. 8, 2023), appeal dism'd, No. 23-11232, 2024 U.S. App. LEXIS 5353, 2024 WL 2880629 (5th Cir. Mar. 5, 2024). But "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process." *Bledsoe v. City of Horn Lake, Miss*., 449 F.3d 650, 653 (5th Cir. 2006). (citing *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Wells v. Hico Indep. Sch. Dist*., 736 F.2d 243, 256 & n. 16 (5th Cir.1984) (footnote omitted)). "Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Bledsoe*, 449 F.3d at 653 (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir.1981)) (emphasis added).

The Fifth Circuit employs a seven-element "stigma-plus-infringement" test to determine whether a plaintiff has a § 1983 claim for deprivation of liberty without notice or opportunity to clear his name. *Id*. (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)). Specifically, a plaintiff must show:

> (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.

*Bledsoe*, 449 F.3d at 653.

As the Fifth Circuit has noted, "In *Paul v. Davis*, the Supreme Court held that the infliction of a stigma on a person's reputation by a state official, without more, does not infringe upon a protected liberty interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995)(quoting *Paul v. Davis*, 424 U.S. 693, 710-11, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976)).

This court, in *Perricone v. City of Mineral Wells Tex.*, No. 4:19-CV-00992-O, 2023 WL 7420256, 2023 U.S. Dist. LEXIS 201425, at 22-23 (N.D. Tex. Nov. 8, 2023), appeal dism'd, No. 23-11232, 2024 U.S. App. LEXIS 5353, 2024 WL 2880629 (5th Cir. Mar. 5, 2024), encapsulated the analysis of a stigma-plus Due Process claim regarding the former City Mayor as follows:

> In analyzing a due process claim, courts engage in a two-part inquiry, determining first whether the plaintiff was deprived of a protected interest, and, if so, determining what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). When the protected interest at issue involves a reputational harm, courts employ the stigma-plus test first articulated *Paul v. Davis*. 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). To satisfy this two-part stigma-plus test, plaintiffs alleging reputational harm must show that: (1) they suffered a stigma from governmental action plus (2) they experienced an alteration or extinguishment of "a right or status previously recognized by state law." *Paul*, 424 U.S. at 711. The Fifth Circuit "has consistently applied Paul by requiring that a section 1983 claimant show a stigma plus an infringement of some other interest." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991); see also *Kovac v. Wray,* 363 F. Supp. 3d 721, 753 (N.D. Tex. 2019) (summarizing stigma-plus jurisprudence). And turning to the second half of the broader due process inquiry, when the government deprives a person of a protected life, liberty, or property interest, the government must provide an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (internal quotations and citation omitted).

Here, Plaintiff cannot demonstrate the vital elements of her Stigma-plus Due Process theory. First and fundamentally, she was not an employee of the City of Southlake, taking her out of the usual employment context for a Stigma-plus theory of Due Process claims. She candidly concedes same, writing "This claim does not arise in the employment context . . ."[52] Second, as in *Perricone*,

---

[52]See, Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph VI(104)(b), p. 18

Plaintiff fails both prongs of the Due Process inquiry because she has not articulated a constitutionally cognizable injury. As discussed above, there is no constitutional right to a completely accurate police report. Moreover, even if Plaintiff's pleading could be construed to adequately allege that the police report somehow besmirches her reputation as a credible person, more is required under the Stigma-plus test. Plaintiff's pleadings underscore that her Due Process claim rests entirely on the purported damage to her reputation for candor and resulting alleged loss of credibility in two subsequent civil proceedings. This is legally insufficient. Dismissal of Plaintiff's putative Stigma-plus theory should follow.

### 3. Applicable law regarding *Monell* liability

A municipality is a "person" subject to suit under § 1983 under certain circumstances. See *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Although a municipality cannot be held liable simply on a theory of respondeat superior, id. at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); see also *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018).

The first element requires that Plaintiff adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at

542 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a [municipality] may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id*. (citations omitted) (second alteration in original). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Plaintiff must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing City of *St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988)). "A 'policymaker' must be one who takes the place of a governing body in a designated area [*9] of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental. . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); see also *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Plaintiff adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). Plaintiff must therefore plausibly plead "that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id*. (quoting *Brown*, 520 U.S. at 411); see also *Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting Brown, 520 U.S. at 407)). Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement. *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

### 4.      Plaintiff fails to sufficiently plead any plausible *Monell* claim

Plaintiff's "Municipal Liability (Monell)" allegations are little more that conclusory contentions mixed with rote regurgitation of *Monell* buzzwords.[53] Distilled to its essence, Plaintiff's *Monell* theory is founded on the contention that:

> The City maintained a policy, practice, or custom of continuing to maintain and rely upon materially inaccurate or misleading police records after receiving notice of their inaccuracies, without providing any constitutionally adequate mechanism for neutral review, correction, annotation, or meaningful challenge.[54]

---

[53]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraphs VI(105)(a)-(r), p. 21-23

[54]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraphs VI(105)(e), p. 21

Overcoming the City's challenge requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). Plaintiff must do far more than just suggest that the City of Southlake violated her rights - it must stem from a deliberate systemic City practice which is constitutionally unsound. She clearly fails here. Her First Amended Complaint does not even allege more than an isolated violation of her constitutional rights, assuming arguendo that they were even violated; this is insufficient to establish a custom or policy of the City. *See, e.g., Gates v. Texas Dep't of Protective & Regul. Servs.*, 537 F.3d 404, 437 (5th Cir. 2008)*; O'Quinn v. Manuel*, 773 F.2d 605, 610 (5th Cir.1985); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820, 85 L. Ed. 2d 791, 105 S. Ct. 2427 (1985). Accordingly, because Plaintiff fails to sufficiently allege that the City maintained an unconstitutional policy, custom, or practice necessary to establish *Monell* liability, she has failed to state a claim which is capable of surviving Rule 12(b)(6) dismissal.

Telling is that the word "moving force" only appears once Plaintiff's entire First Amended Complaint, and even then, in the most cursory of maner.[55] Missing, too, is any cogent discussion by Plaintiff of how any City's policies were in any way constitutionally deficient. Plaintiff's suggestion [though really not even made at all] that the City's policies were the moving force behind the alleged nonexistent constitutional harm falls far short of the "high threshold" of causation, *Piotrowski*, 237 F.3d at 580, required to avoid "municipal liability collaps[ing] into respondeat superior liability" *Snyder*, 142 F.3d at 796 (quoting *Brown*, 520 U.S., at 415). In other words, Plaintiff's pleadings simply do not allow an inference that any purportedly problematic policy was the moving force the led to any cognizable constitutional violation. Accordingly, Plaintiff has not

---

[55]Plaintiff's First Amended Complaint [ECF No. 8], paragraph VI(105)(r), p. 23 ("The City's policies, customs, practices, failures to train and supervise, and ratified conduct were the moving force behind the constitutional violations suffered by Plaintiff, thus satisfying the requirements for municipal liability under 42 U.S.C. §1983.")

plausibly alleged that a City policy nor an action by any City employee led to any "actual cause of the constitutional violation" *Valle*, 613 F.3d at 546 (citing *Thompson*, 578 F.3d at 300).

Plaintiff's *Monell* claim falls flat, to the point of causation being non-existent as a matter of law.  Even given its best spin, her allegations are nothing more than conclusive  statements and do not point to a specific policy that was the moving force for an constitutional violation. What emerges from even a cursory review of allegations, without specific factual allegations to support them, is that she fails to meet her pleading burden. See *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

**5.   City of Southlake cannot be held vicariously liable herein as matter of law**

A governmental entity cannot be held vicariously liable under 42 U.S.C.§1983 for purported unconstitutional acts committed by its employees. *Pembaur vs. City of Cincinnati*, 106 S.Ct. 1292, 1298 (1986); *Monell vs. Dep't of Social Servs.,* 98 S.Ct. 2018, 2037 (1978); *Brown vs. Bryan County*, 53 F.3d 1410 (5th Cir. 1985); *Piotrowski*, 51 F.3d 512; *Harris vs. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). Thus, to the extent Plaintiff seeks to foist liability onto the City of Southlake for the actions of its Individual or "Doe" employees, she cannot do so.

**B.   Plaintiff has not properly plead nor can she establish any claims for failure to train or failure to supervise**

Plaintiff's surface-level allegations of a failure to train and/or failure to supervise claim are woefully insufficient. Plaintiff tersely writes:

> In addition, the City failed to adequately train and supervise its officers and personnel regarding the accurate documentation, verification, review, and correction of police reports, despite the obvious and foreseeable risk that inaccurate records would be relied upon in judicial and prosecutorial decision-making.[56]

---

[56]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph VI(105)(k), p. 22

She then argues that "The need for such training and procedures was obvious, as police reports are routinely treated as authoritative by courts, prosecutors, and other governmental actors, and inaccuracies in such records foreseeably result in constitutional harm."[57]

For an inadequate training claim, plaintiffs must establish (1) an inadequate training policy; (2) deliberate indifference in adopting the training policy; and (3) that the inadequate training policy directly caused plaintiff's injury. *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992). Deliberate indifference in adopting the training policy is found when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). For failure to supervise, a plaintiff must show that "(1) the supervisor . . . failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference*." Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998) and *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5thCir. 1987)). Generally, the plaintiff must demonstrate at least a pattern of similar violations. *Id*. (citing *Snyder*, 142 F.3d at 798). The inadequacy of training must be obvious and obviously likely to result in constitutional violation. *Id*. (citing *City of Canton*, 489 U.S. at 390 and *Snyder*, 142 F.3d at 799). "[F]or liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training

---

[57]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph VI(105)(l), p. 22

program is defective."(*Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017)(quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).  The standard to impose municipal liability for a single incident is "extremely narrow" and requires proof "that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).

Plaintiff does not point to any specific deficiencies in any of the Police Department's training or supervision policies; rather, she makes conclusory assertions with absolutely zero factual backing as to claimed actions which displayed deliberate indifference to the Plaintiff's constitutional rights. Similarly, Plaintiff woefully fails to state in a non-conclusory manner any insufficiency in the Police Department's training or supervision of its employees. What emerges from even a cursory review of Plaintiff's FIRST AMENDED COMPLAINT is that her failure to train or supervise allegations are glaringly terse, conclusory, and implausible and cannot survive Rule 12(b)(6) dismissal.

**C.      Plaintiff has failed to plead any plausible claims for Injunctive or Declaratory Judgment relief**

Plaintiff's vague injunctive and declaratory judgment relief is duplicative of her *Monell* theory and therefore not independently viable.  As the Western District Court succinctly set out in *Carson v. Fed. Nat'l Mortg. Ass'n,* 2012 U.S. Dist. LEXIS 204112, 2012 WL 13029757, at *2 (W.D. Tex. Jan. 26, 2012) "The Declaratory Judgments Act does not create an independent cause of action; it only provides a form of relief. When the request for a declaratory judgment adds nothing to an existing suit, and is merely duplicative of the substantive claims already at issue, the request for a declaratory judgment need not be entertained."  District Courts in Texas follow that approach. See, i.e. *Morrison v. Spinnaker Ins. Co.*, Civil Action No. 4:23-cv-324, 2025 U.S. Dist. LEXIS 166347,

at *15 (E.D. Tex. 2025). Plaintiff's "Injunctive and Declaratory Relief" claim[58] is the same as her Procedural Due Process and *Monell* claims against the City, and thus, presents no independent plausible claim for relief.

Furthermore, dismissing the underlying substantive claim against the City effectively resolves any dispute as to Plaintiff's request for Injunctive and/or Declaratory Judgment relief against it. Declaratory relief is unavailable in the absence of some "judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S. Ct. 1288, 4 L. Ed. 2d 1478 (1960). Simply put, unless Plaintiff has a valid Fourteenth Amendment or *Monell* claim, she has no basis for the Court to issue any declaratory judgment against the City. See, i.e., *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, 2017 U.S. Dist. LEXIS 110673, at* n. 9 (N.D. Tex. May 25, 2017).

### D.    Plaintiff's claims against the "Doe" Defendants should be dismissed

The Eastern District of Texas in *Farber v. City of Gainesville*, 2026 WL 319782, 2026 U.S. Dist. LEXIS 26437, at * 23-34 (E.D. Tex Feb. 2, 2026) very recently reiterated the well-established rule and practice regarding the dismissal of "Doe" Defendants, as follows:

> For the most part, "[f]ictitious party practice is not permitted in federal court." *Alexander v. City Police of Lafayette,* No. 6:11-CV-01749 SEC P, 2019 U.S. Dist. LEXIS 91226, 2019 WL 2345083, at *6 (W.D. La. Feb. 27, 2019)(collecting cases), report and recommendation adopted, 2019 U.S. Dist. LEXIS 90319, 2019 WL 2334196, (W.D. La. May 29, 2019); see *Fed. R. Civ. P.* 10(a) (stating that "[t]he title of [a] complaint must name all the parties"); *Doe v. Blue Cross & Blue Shield,* 112 F.3d. 869, 872 (7th Cir. 1997). Because courts lack personal jurisdiction over fictitious defendants, claims asserted against them can be dismissed sua sponte. See *King v. Forest*, No. 3:08-CV-1405-L, 2008 WL 4951049, at * 4 (N.D. Tex. Nov. 14, 2008).

Like the Doe Defendants in *Farber* [and many other cases], the five fictitious "John/Jane Doe" Defendants herein should be dismissed with prejudice.

---

[58]Plaintiff's FIRST AMENDED COMPLAINT [ECF No. 8], paragraph VII(106)-(113), p. 23-24

**E.**     **Court can and should also dismiss the unserved Defendants because some grounds for dismissal of City also apply to these unserved Defendants**

The fictitious "Doe" Defendants are not proper parties herein as discussed above and should be dismissed, but the Plaintiff has now added specific individuals who should also be dismissed. While these unserved individual Defendants obviously did not join in this FIRST AMENDED MOTION TO DISMISS, "[w]here a defending party establishes that a Plaintiff has no cause of action, the defense generally also inures to the benefit of a defaulting or unserved defendant." See *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); see also *McCarty v. Zapata Cnty.*, 243 F. App'x 792, 794 (5th Cir. 2007)(unpublished). This Court could reasonably find no distinction here where the claims asserted against the City fail to allege any plausible claims, such that the benefit of the FIRST AMENDED MOTION TO DISMISS presented by the City of Southlake should inure to the individual Defendants, and specifically, Officer Whitman, Detective Roberson, Captain Henninger, Chief Casey, and Records Manager Blum.  Simply put, for some of the legal reasons compelling dismissal of the City [i.e. lack of any constitutional deprivations, which is a core element of Qualified Immunity], the individual Defendants should be dismissed with prejudice as well.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendant **CITY OF SOUTHLAKE, TEXAS,** prays that the Court grant their FIRST AMENDED MOTION TO DISMISS; that it dismiss the Plaintiff's claims against all Defendants, and that the City have such other relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

By:    /s/ *Robert J. Davis*_____
**ROBERT J. DAVIS**
State Bar No. 05543500
**KYLE THOMAS BARRY**
State Bar No. 24122284
**MATTHEWS,  SHIELS, KNOTT,**
**EDEN, DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)
bdavis@mssattorneys.com
kbarry@mssattorneys.com

**ATTORNEYS FOR DEFENDANT**
**CITY OF SOUTHLAKE, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the undersigned and following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Brian D. Wilcox

    /s/ *Robert J. Davis*_____
**ROBERT J. DAVIS**