**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ZDENKA WILCOX,** | § | **Civil Action No. 4:26-cv-147** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF SOUTHLAKE, TEXAS;** | § | |
| **JOHN/JANE DOES 1–5,** | § | |
| in their individual and official capacities, | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6)
MOTION TO DISMISS**

## I. INTRODUCTION

1. The City's motion rests on a deliberate misreading of both the First Amended Complaint and governing Fifth Circuit precedent.

2. Plaintiff does not assert a freestanding constitutional right to an error-free police report, a particular investigative outcome, or prosecution of another person. Nor does she seek relief for reputational harm alone.

3. As pleaded, this case concerns the City's creation, maintenance, and official use of materially inaccurate police records after notice of their inaccuracies, coupled with the absence of any meaningful process to review, correct, or challenge those records.

1

4. As further pleaded, the records did not merely contain harmless mistakes. They incorporated material incident dates that are not reflected in Plaintiff's recorded statement and were later treated as authoritative and relied upon in proceedings affecting Plaintiff's legal position, parental interests, credibility, and exposing her to incarceration.

5. As pleaded, these allegations implicate a procedural due process claim under a stigma-plus theory. The alleged stigma arises from the State's use of materially inaccurate official records in proceedings carrying legal consequences.

6. The "plus" is the alleged alteration of Plaintiff's legal position, including adverse use in proceedings affecting parental rights and exposing her to incarceration, without a meaningful opportunity to correct the record.

7. The Amended Complaint further alleges that the challenged conduct resulted from municipal policies, customs, practices, failures in training or supervision, and ratification after notice.

8. At the pleading stage, Plaintiff is not required to plead detailed internal policies or procedures, particularly where those materials are within the City's exclusive control.

9. A complaint need only contain sufficient factual matter to raise a right to relief above the speculative level and permit a reasonable inference of liability. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

10. Consistent with that standard, allegations are sufficient where they support a reasonable expectation that discovery will reveal evidence of the claim. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

11. This principle applies with particular force here, where the City has asserted the litigation exception under the Texas Public Information Act and sought a ruling from the Office of the Attorney General to withhold responsive materials, thereby maintaining exclusive control over the very policies and procedures it now contends must be pleaded with specificity.[1]

12. Taken as true, the pleaded facts support such an inference here.

13. The City seeks dismissal based on the absence of policy-level detail while maintaining control over the very information necessary to supply that detail.

14. Rule 12(b)(6) does not permit dismissal under those circumstances. See *Twombly*, 550 U.S. at 556; *Lormand*, 565 F.3d at 257; see also *Iqbal*, 556 U.S. at 678.

---

[1] The City's invocation of the Texas Public Information Act litigation exception, and its request for an Attorney General ruling to withhold responsive materials, underscores that the relevant policies, training materials, and procedures remain exclusively within the City's control at this stage.

## II. THIS IS NOT A "MERE INACCURATE REPORT" CASE

15. Defendant relies on the premise that inaccurate or false police reports, standing alone, do not give rise to a constitutional violation. Plaintiff does not dispute that general proposition.

16. But this case does not involve a freestanding right to report accuracy or a mere disagreement with an officer's characterization of events.

17. Instead, as pleaded, material facts, specifically incident dates, were inserted into official records, are not reflected in Plaintiff's recorded statement, and were later treated as authoritative.

18. Those facts were material because they altered the substance of the report and the framework for subsequent decisions.

19. The Amended Complaint further alleges that those records were adopted and relied upon in official functions.

20. That reliance included investigative referrals and proceedings affecting Plaintiff's legal status, including use of the records to challenge her credibility and to support allegations against her, particularly where the inserted dates were later treated as factual benchmarks in assessing the validity of her report.

21. Plaintiff was subjected to contempt proceedings, initiated by third parties, but in which the same official records were used to assess her credibility and legal position, exposing her to incarceration and impairing her parental rights.

22. As pleaded, this case concerns the State's creation of materially altered records, its continued reliance on those records after notice, and the use of those records in proceedings carrying legal consequences, without any meaningful opportunity for correction.

23. It is therefore not a case about the mere existence of an inaccurate report, and Defendant's authorities addressing "inaccurate reports" without further state action do not resolve the claim presented here.

## III. PROCEDURAL DUE PROCESS (STIGMA-PLUS)

24. Defendant applies an employment-based stigma-plus framework that is not applicable here.

25. The multi-factor test it relies upon arises in the context of public employment discharge and does not define the elements of a stigma-plus claim outside that context.

26. No employment-based deprivation is alleged.

27. Under stigma-plus principles, a plaintiff must allege false and stigmatizing state action plus alteration of a recognized liberty or property interest, without a meaningful opportunity for review or correction. See *Paul v. Davis*, 424 U.S. 693, 708–09 (1976); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701–02 (5th Cir. 1991); cf. *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006).

28. The Fifth Circuit has applied that framework outside the employment context, explaining that the infringement component addresses situations where the State seeks to "remove or significantly alter" a protected liberty or property interest. See *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701–02 (5th Cir. 1991).

29. In that context, a protected liberty interest includes not only freedom from restraint through incarceration, but also the fundamental right of parents to direct the care, custody, and control of their children. See *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing the "fundamental liberty interest of natural parents in the care, custody, and management of their child"); *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000) (confirming that the Due Process Clause protects parents 'fundamental right to make decisions concerning the care, custody, and control of their children).

30. Here, Plaintiff does not rely on generalized reputational harm or speculative impacts.

31. Rather, the Amended Complaint alleges that the State's use of materially inaccurate official records was introduced, relied upon, and reinforced in proceedings initiated by third parties, including contempt proceedings and related litigation, through official channels and state actor participation.

32. In those proceedings, the records were used to assess Plaintiff's credibility and legal position, exposing her to incarceration and affecting her parental rights, through the introduction and reliance on state-created records in proceedings carrying legal consequences that directly implicated those protected liberty interests.

33. The Due Process Clause protects against being subjected to proceedings that place liberty interests at stake without adequate process, not solely against the ultimate imposition of those deprivations, consistent with the principle that due process protections attach where state action subjects an individual to proceedings threatening recognized liberty interests.

34. As pleaded, the stigma arises from the State's creation and use of materially altered official records, specifically, the insertion of incident dates not reflected in Plaintiff's recorded statement, that were then treated as authoritative and used to assess the validity of her report, thereby casting Plaintiff as having made false allegations.

35. This is not reputational harm in the abstract, but state-imposed stigma tied to official records used in proceedings carrying legal consequences.

36. The Amended Complaint alleges that officials created and maintained materially inaccurate records in the course of their official duties.

4

37. It further alleges that those records were transmitted and relied upon across multiple levels of decision-making within law enforcement and in referrals to prosecutorial authorities.

38. The records were then used in investigative and quasi-judicial contexts to challenge Plaintiff's credibility and support allegations against her.

39. Taken as true, these facts plausibly allege the "plus" requirement by describing state use of those records in connection with proceedings affecting recognized liberty interests, including exposure to incarceration and impairment of parental rights, beyond reputational harm alone. See *Paul*, 424 U.S. at 708–09; *Bledsoe*, 449 F.3d at 653.

40. The City's own detective appeared in court and affirmatively relied on the inaccurate records to impeach Plaintiff's credibility, official state use consistent with the stigma-plus principles applied in *San Jacinto* and sufficient, at the pleading stage, to distinguish this case from pure defamation or reputational harm alone.

41. The Amended Complaint also alleges the absence of any meaningful opportunity to obtain review or correction of those records, as recognized in stigma-plus jurisprudence. See *Bledsoe*, 449 F.3d at 653; see also *Paul*, 424 U.S. at 708–09.

42. The relevant due process violation arises from the State's creation and continued maintenance of materially inaccurate official records without any meaningful mechanism for review or correction before those records were used against Plaintiff in proceedings carrying legal consequences.

43. Plaintiff sought correction through formal channels, not to secure a perfectly accurate report, but to eliminate the State-imposed stigma and prevent the downstream use of materially inaccurate records in proceedings affecting her legal position and liberty interests.

44. The City neither provided a mechanism for review nor corrected the records after notice, and instead continued to rely on them.

45. Plaintiff was therefore required to confront those records in subsequent proceedings without any prior opportunity to clear her name.

46. Taken together, these allegations plausibly state a procedural due process violation.

## IV. MUNICIPAL LIABILITY (MONELL)

### A. Policy, Custom, or Practice

47. A municipality may be sued under § 1983 where the action alleged to be unconstitutional implements or executes an officially adopted policy, regulation, or decision, or where the constitutional deprivation is visited pursuant to governmental custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978).

48. To establish municipal liability, a plaintiff must ultimately prove "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force 'is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

49. At the pleading stage, Plaintiff must allege facts permitting a reasonable inference that an official policy or custom, attributable to a municipal policymaker, caused the constitutional violation; Plaintiff need not prove the precise policy language or internal procedures before discovery, particularly where those materials are within the City's exclusive control.

50. The Amended Complaint alleges that the same materially inaccurate records were not merely created by one actor and left unused, but were maintained, transmitted, and relied upon across multiple levels of official decision-making.

51. That sequence matters for Monell purposes. A record created in error may be isolated; a record repeatedly treated as authoritative by investigators, supervisors, and referral channels after notice of its inaccuracies supports a reasonable inference that the challenged conduct reflected an accepted municipal practice.

52. Continued reliance on the records after notice of their inaccuracies supports a reasonable inference that the conduct was not an isolated or aberrational act, but instead reflected an accepted practice or systemic deficiency sufficient, at the pleading stage, to support an inference of an underlying policy or custom.

53. Plaintiff sought the policies governing these practices.

54. The City produced none yet seeks dismissal based on their absence. See n.1.

55. At this stage, Plaintiff may rely on reasonable inferences drawn from observed conduct. *Lormand*, 565 F.3d at 257.

**B. Failure to Train or Supervise**

56. A municipality may be liable for failure to train where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

57. Deliberate indifference requires notice that a course of training is deficient in a particular respect and likely to cause constitutional violations; ordinarily, a pattern of similar violations supplies that notice. See *Canton*, 489 U.S. at 390; *Piotrowski*, 237 F.3d at 579–80.

58. The Amended Complaint alleges deficiencies in training and supervision concerning record creation, review, and correction. This inference is reinforced by Tarrant County's response to a Public Information Act request, which reported no responsive policies governing these functions, permitting a reasonable inference that no articulated policy

framework guided these practices and that the need for training was obvious and likely to result in constitutional violations.[2]

59. The Amended Complaint further alleges insertion of material facts, continued reliance after notice, the absence of any correction mechanism, and that corroborating evidence was disregarded and review processes failed, such that, taken as true, these facts support a reasonable inference of deliberate indifference.

60. These same allegations further support an inference that those deficiencies caused the alleged deprivation. See *Canton*, 489 U.S. at 391.

## C. Ratification

61. *Praprotnik* recognizes that when a subordinate's decision is subject to review by authorized municipal policymakers, and those policymakers "approve a subordinate's decision and the basis for it," the ratification is chargeable to the municipality because the policymakers 'decision is final. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Municipal liability in this context does not rest on respondeat superior, but on the municipality's own decision, through its final policymakers, to adopt the subordinate's action and rationale.

62. *Praprotnik* also makes clear that mere acquiescence in, or failure to investigate, a subordinate's discretionary decision is not enough to establish municipal liability. *Id*. at 130.

63. The Amended Complaint does not rely on mere nonfeasance. It alleges that officials with supervisory and policymaking authority were placed on notice, through communications and formal requests identifying the inaccuracies and the basis for them, and their consequences.

64. It further alleges that, after notice, the City continued to maintain and rely on the records as authoritative in investigative and related proceedings.

65. Taken as true, and in light of the alleged notice to supervisory and policymaking officials, their opportunity to review, and the City's continued maintenance and use of the records as authoritative in official channels, these facts support a reasonable inference that authorized policymakers approved the continued use of the records and the basis for that use, sufficient to plead ratification at this stage under *Praprotnik*.

66. At the 12(b)(6) stage, continued official reliance after specific notice to supervisory and policymaking officials supports a reasonable inference of custom or ratification; Plaintiff

---

[2] In response to Plaintiff's Public Information Act request seeking policies, procedures, and training materials governing the creation, review, and correction of police reports and associated records, Tarrant County reported that it had no responsive documents. This response is referenced solely to demonstrate the absence of articulated policy standards and the resulting inference at the pleading stage; it is not offered for the truth of any disputed factual matter beyond the existence of the response itself.

need not plead the internal policy verbatim where the City controls the documents and has invoked TPIA exceptions to withhold them.

## V. DEFENDANT'S MISCHARACTERIZATIONS DO NOT WARRANT DISMISSAL

67. Defendant characterizes this case as involving mere inaccuracies or credibility disputes, but that framing does not account for the allegations actually pleaded.

68. The Amended Complaint alleges the insertion of material facts into official records, the institutional adoption and continued reliance on those records after notice of their inaccuracies, and the absence of any meaningful process to correct them.

69. Authorities addressing inaccurate reports in isolation do not resolve claims based on the State's creation and use of materially altered records in proceedings carrying legal consequences.

70. At the pleading stage, the Court evaluates the claims as alleged, drawing reasonable inferences in Plaintiff's favor, rather than adopting Defendant's characterization of the facts.

## VI. DISCOVERY IS NECESSARY

71. Defendant contends that the absence of detailed policy allegations warrants dismissal, while simultaneously maintaining exclusive control over the policies, training materials, and procedures at issue.

72. Under these circumstances, Plaintiff cannot reasonably be required to plead facts that remain within Defendant's exclusive control and have been withheld through the Public Information Act process.

73. The pleading standard permits reliance on reasonable inferences where the alleged facts support a reasonable expectation that discovery will reveal evidence of the claim. See *Lormand*, 565 F.3d at 257.

74. Accordingly, the appropriate course is to permit discovery to proceed rather than to dismiss the claims at the threshold.

## VII. INJUNCTIVE AND DECLARATORY RELIEF

75. The Amended Complaint alleges ongoing effects from the challenged records, including their continued maintenance and use in official channels and proceedings carrying legal consequences.

76. At the pleading stage, those allegations are sufficient to support requests for declaratory and prospective relief directed at the continued use of the records and the absence of a meaningful correction process, particularly where the alleged constitutional violation is ongoing. The allegations of ongoing maintenance of the inaccurate records establish a live controversy supporting prospective relief.

## VIII. DOE DEFENDANTS

77. The identities and roles of individual actors involved in the creation, transmission, and continued use of the records are within Defendants 'exclusive control and will be clarified through discovery.

78. In these circumstances, dismissal of Doe defendants at the pleading stage would be premature, as the allegations plausibly implicate additional actors whose identities are not yet available to Plaintiff.

## IX. CONCLUSION

79. Taking the allegations as true and drawing reasonable inferences in Plaintiff's favor, the Amended Complaint plausibly alleges a procedural due process violation and a basis for municipal liability under § 1983.

80. The motion to dismiss should therefore be denied.

## X. ALTERNATIVE RELIEF

81. If the Court finds any pleading deficiency, the appropriate remedy is limited discovery targeted to the City of Southlake's policies and practices governing police records and corrections, including those implemented by the Southlake Police Department, the detective's testimony, and the notice provided to policymakers, followed by leave to amend rather than outright dismissal.

Respectfully submitted,

**/s/ Brian D. Wilcox**
Brian D. Wilcox
State Bar No. CA 244096
Brian D. Wilcox Law, PLLC
Southlake, Texas 76092
Telephone: 949-533-7530
Email: Brian@BrianDWilcoxLaw.com

ATTORNEY FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2026, I electronically filed the foregoing document,

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS,

with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

**/s/ Brian D. Wilcox**
Brian D. Wilcox