| | | |
|---|---|---|
| ZDENKA WILCOX | § | |
| | § | |
| v. | § | Case No. 4:26-cv-147 |
| | § | |
| CITY OF SOUTHLAKE, TEXAS, et al. | § | |

**DEFENDANT CITY OF SOUTHLAKE, TEXAS'
REPLY TO PLAINTIFF'S RESPONSE TO THEIR MOTION TO DISMISS**

COMES NOW **CITY OF SOUTHLAKE, TEXAS**, one of ten Defendants, and files their

REPLY TO PLAINTIFF'S RESPONSE TO THEIR MOTION TO DISMISS, as follows:

**I.**
**Plaintiff's Failure to Aver Plausible Claims Related to an "Inaccurate Report"**

The PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S RULE 12(B)(6) MOTION TO

DISMISS (hereinafter "PLAINTIFF'S RESPONSE") [ECF No. 13] underscores how her lawsuit fails to

aver plausible claims against the City of Southlake or any of its unnamed Officers. Like an ostrich

that buries its head in the sand, Plaintiff continues to argue untenable claims against the City despite

little, if any, legal or factual basis to do so. As detailed by the City in its MOTION TO DISMISS, the gist

of Plaintiff's FIRST AMENDED COMPLAINT remains that she begrudges her credibility characterization

in the Police Department Report and various related records. Plaintiff's RESPONSE seeks to conjure

up some-type claim based around the premise that the State created, "materially altered

records......and the use of those records in proceedings carry legal consequences, without any

meaningful opportunity for correction."[1] Her ensuing discussion, however, is nothing more than

conclusory assertions without meaningful analysis or substantive discussion of any relevant facts

---

[1]Plaintiff's RESPONSE [ECF No. 13] paragraph II(22), p. 3

demonstrating any liability on the City's part. Put simply, the Fifth Circuit has plainly held that "there is no right to a completely accurate police report." *Smith v. Patri*, 99 Fed. App'x 497, 498 (5th Cir. 2004)(per curiam). Likewise, mere "disagreement with the information in the reports and with the officers' version of events is not sufficient to show that the officers falsified their reports." *Ballard v. Hedwig Vill. Police Dep't*, 408 F. App'x 844, 846 (5th Cir. 2011)(per curiam).

Plaintiff's RESPONSE does nothing to overcome this threshold issue. Even if the Southlake Police Report and associated records contain inaccurate or even false allegations against the Plaintiff, the mere filing of a false, misleading, or incomplete Police Report, without more, is not a Constitutional deprivation nor infringement upon a liberty interest, and thus, does not create a cause of action in damages under §1983 being brought as a putative 14th Amendment Due Process claim. Despite Plaintiff's best efforts, her pleadings and both parties exhibits- when viewed through the lens of clearly established law - readily reveal that she does not allege any plausible claims against the City of Southlake. Dismissal of the City of Southlake should follow.

## II.
### Plaintiff has not adequately plead a Due Process Claim against the City

Plaintiff's terse Stigma-plus allegations are little more than generic legal jargon untethered to any particularized facts, and her formulaic and threadbare recitals cannot rise to the level of a constitutional claim or survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff repeats throughout her RESPONSE the mantra that she was deprived of her due process rights by the State's creation and continued maintenance of inaccurate police records.[2] Her presumed due process theory is encapsulated in the following averment in her RESPONSE: "The City neither provided a mechanism for review nor corrected the records after notice, and instead continued to rely

---

[2]See, generally, Plaintiff's RESPONSE [ECF No. 13] paragraph III, p. 3-5

on them."[3] This does nothing to demonstrate a yet-unplead due process claim presumably premised on some type disparate treatment theory.

This court, in *Perricone v. City of Mineral Wells Tex.*, No. 4:19-CV-00992-O, 2023 WL 7420256, 2023 U.S. Dist. LEXIS 201425, at 22-23 (N.D. Tex. Nov. 8, 2023), appeal dism'd, No. 23-11232, 2024 U.S. App. LEXIS 5353, 2024 WL 2880629 (5th Cir. Mar. 5, 2024), encapsulated the analysis of a stigma-plus Due Process claim regarding the former City Mayor as follows:

> In analyzing a due process claim, courts engage in a two-part inquiry, determining first whether the plaintiff was deprived of a protected interest, and, if so, determining what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982). When the protected interest at issue involves a reputational harm, courts employ the stigma-plus test first articulated *Paul v. Davis*. 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976). To satisfy this two-part stigma-plus test, plaintiffs alleging reputational harm must show that: (1) they suffered a stigma from governmental action plus (2) they experienced an alteration or extinguishment of "a right or status previously recognized by state law." *Paul*, 424 U.S. at 711. The Fifth Circuit "has consistently applied Paul by requiring that a section 1983 claimant show a stigma plus an infringement of some other interest." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991); see also *Kovac v. Wray,* 363 F. Supp. 3d 721, 753 (N.D. Tex. 2019) (summarizing stigma-plus jurisprudence). And turning to the second half of the broader due process inquiry, when the government deprives a person of a protected life, liberty, or property interest, the government must provide an "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (internal quotations and citation omitted).

As in *Perricone*, Plaintiff fails both prongs of the Due Process inquiry because she has not articulated a constitutionally cognizable injury. As discussed above, there is no constitutional right to a completely accurate police report. Moreover, even if Plaintiff's pleading could be construed to adequately allege that the police report somehow besmirches her reputation as a credible person, more is required under the Stigma-plus test. Plaintiff's RESPONSE does nothing to clear this threshold hurdle. Instead, Plaintiff rehashes old allegations which fail to allege any viable due process claim.

---

[3]Plaintiff's RESPONSE [ECF No. 13], paragraph III (44), p. 5

**III**.
**Plaintiff has not adequately plead nor could she establish under these facts
any Section 1983 and *Monell* liability against the City of Southlake**

It is beyond cavil that a governmental entity such as the City of Southlake can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. §1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978). An isolated incident cannot be the basis for holding a City liable. Despite this clearly established law, the Plaintiff believes she can prevail. But she cannot. Plaintiff sweepingly argues that "the same materially inaccurate records were not merely created by one actor and left unused, but were maintained, transmitted, and relied upon across multiple levels of official decision-making."[4] Continuing in this vein, she writes "[C]ontinued reliance on the records after notice of their inaccuracies supports a reasonable inference that the conduct was not isolated or aberrational act, but instead reflected an accepted practice or systemic deficiency."[5] This type generic "the City did me wrong" kind of allegations do not meet threshold plausibility requirements.

The existence of a constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F. 2d 605, 610 (5th Cir. 1985) (citing *City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S. Ct. 2427, 85 L.Ed. 2d 791 (1985); see also, *Tuttle*, 105 S. Ct. at 2436 (plurality opinion) "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident [of unconstitutional conduct forming the basis of the section 1983 action] will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." The existence of a

---

[4]Plaintiff's RESPONSE [ECF No. 13] paragraph IV (50), p. 6

[5]Plaintiff's RESPONSE [ECF No. 13] paragraph IV (52), p. 6

constitutionally deficient policy cannot be inferred from a single wrongful act. *O'Quinn v. Manuel*, 773 F. 2d 605, 610 (5th Cir. 1985) (citing *City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S. Ct. 2427, 85 L.Ed. 2d 791 (1985); see also, *Tuttle*, 105 S. Ct. at 2436 (plurality opinion) "[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident [of unconstitutional conduct forming the basis of the section 1983 action] will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."

Plaintiff was required to come forward with more than mere allegations establishing that her purported constitutional deprivations were caused by the application of an official policy, custom or practice of the City of Southlake. Plaintiff's FIRST AMENDED COMPLAINT fails woefully in this regard and does not allege more than an isolated violation of her own constitutional rights, assuming arguendo that they were even violated; this is insufficient to establish a custom or policy of the City. Accordingly, because the Plaintiff fails to sufficiently allege that the City of Southlake maintained an unconstitutional policy, custom, or practice necessary to establish *Monell* liability, she has failed to properly state a claim which is capable of surviving Rule 12(b)(6) dismissal.

Moreover, while the City certainly does not concede that Plaintiff has adequately plead the first two *Monell* prongs, it is the third prong where Plaintiff's claims are most obviously implausible. A meaningful discussion of the concept of "moving force" is completely absent from the her lawsuit and the word "moving force" appears only a single time in her entire FIRST AMENDED COMPLAINT, and only in an entirely conclusory manner. Plaintiff's RESPONSE does not even address this issue, thereby conceding she cannot demonstrate moving force - or even that the City has engaged in any constitutionally prohibited practice. Plaintiff's approach falls far short of the "high threshold" of causation, *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001), required to avoid

"municipal liability collaps[ing] into respondeat superior liability" *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)

**IV.**
**Plaintiff has not properly plead nor can she establish**
**any claims for failure to train or failure to supervise**

Plaintiff argues in her RESPONSE that:

The Amended Complaint alleges deficiencies in training and supervision concerning record creation, review, and correction. This inference is reinforced by Tarrant County's response to a Public Information Act request, which reported no responsive policies governing these functions, permitting a reasonable inference that no articulated policy framework guided these practices and that the need for training was obvious and likely to result in constitutional violations.[6]

For an inadequate training claim, plaintiffs must establish (1) an inadequate training policy; (2) deliberate indifference in adopting the training policy; and (3) that the inadequate training policy directly caused plaintiff's injury. *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992). Deliberate indifference in adopting the training policy is found when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). For failure to supervise, a plaintiff must show that "(1) the supervisor . . . failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiff's rights; and (3) the failure to supervise amounts to deliberate indifference*." Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998). "Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur County, TX*,

---

[6]Plaintiff's RESPONSE [ECF No. 13] paragraph IV (58), p. 6-7

245 F.3d 447, 459 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998) and *Thompkins v. Belt*, 828 F.2d 298, 304-05 (5[th]Cir. 1987)).

Plaintiff does not point to any specific deficiencies in any of the Police Department's training or supervision policies; rather, she makes conclusory assertions with absolutely zero factual backing as to claimed actions which displayed deliberate indifference to the Plaintiff's constitutional rights. Similarly, Plaintiff woefully fails to state in a non-conclusory manner any insufficiency in the Police Department's training or supervision of its employees. What emerges from even a cursory review of Plaintiff's FIRST AMENDED COMPLAINT is that her failure to train or supervise allegations are glaringly terse, conclusory, and implausible and cannot survive Rule 12(b)(6) dismissal.

## V.
## Plaintiff's Ratification Theory fails

The paucity of actual evidence to support Plaintiff's "ratification" theory is telling, especially considering that Fifth Circuit precedent has limited the theory of ratification to "extreme factual situations." See, i.e., *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985); see also, *Lugo v. Collin Cnty.*, No. 4:11-CV-00057, 2011 WL 4378093, 2011 U.S. Dist. LEXIS 106681 (E.D. Tex. Aug. 2, 2011).

Plaintiff suggests that "there is a reasonable inference that authorized policymakers approved the continued use of the records and the basis for that use, sufficient to plead ratification at this stage."[7] But distilled to its essence, the Plaintiff's ratification argument is little more than the same tired trope that the City maintained police records which she disapproves of her characterization within. There is nothing "extreme" about what transpired regarding the Plaintiff's characterization in these police records. There remain no plausible non-conclusory factual allegations that would

---

[7]Plaintiff's RESPONSE [ECF No. 13] paragraph IV (65), p. 7

convert this situation into the "extreme factual situation" for which ratification would apply and overcome the three traditional elements of *Monell*.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendant **CITY OF SOUTHLAKE, TEXAS,** prays that the Court grant their MOTION TO DISMISS; that it dismiss the Plaintiff's claims, and that the City have such other relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

By: /s/ *Robert J. Davis*
**ROBERT J. DAVIS**
State Bar No. 05543500
**KYLE THOMAS BARRY**
State Bar No. 24122284
**MATTHEWS, SHIELS, KNOTT,**
**EDEN, DAVIS & BEANLAND, L.L.P.**
8131 LBJ Freeway, Suite 700
Dallas, Texas 75251
972/234-3400 (office)
972/234-1750 (telecopier)
bdavis@mssattorneys.com
kbarry@mssattorneys.com

**ATTORNEYS FOR DEFENDANT**
**CITY OF SOUTHLAKE, TEXAS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2026, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic filing system sent a "Notice of Electronic Filing" to the undersigned and following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means: Brian D. Wilcox

/s/ *Robert J. Davis*
**ROBERT J. DAVIS**