**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ZDENKA WILCOX,** | § | **Civil Action No. 4:26-cv-147** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITY OF SOUTHLAKE, TEXAS;** | § | |
| **JOHN/JANE DOES 1–5,** | § | |
| **in their individual and official capacities,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Zdenka Wilcox files this Second Amended Complaint pursuant to the Court's July 23, 2026 Order and alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from the City of Southlake's maintenance, repetition, and official use of materially inaccurate information in Southlake Police Department ("SLPD") records concerning Plaintiff's report of domestic violence.

2. On March 19, 2024, Plaintiff reported incidents of domestic violence to SLPD and provided photographs depicting injuries. Plaintiff did not identify March 27, 2021 or May 9, 2022 as dates on which the assaults occurred.

3. SLPD records nevertheless associated March 27, 2021 and May 9, 2022 with the reported assaults.

4. Those dates later became material. On May 30, 2025, Juan Duran presented SLPD with flight records concerning those dates and requested that SLPD pursue charges against Plaintiff for False Report under Texas Penal Code § 37.08.

5. On June 24, 2025, Detective Thomas Roberson documented Duran's request and described the flight records as covering “the period of dates listed by Zdenka Wilcox, namely March 27, 2021, and again on May 9, 2022.”

6. Plaintiff alleges that this was a materially false governmental attribution because Plaintiff did not identify either date as an assault date.

7. The June 24 statement was made in the same official supplement documenting Duran's presentation of evidence concerning those dates and his request that SLPD pursue False Report charges against Plaintiff.

8. Plaintiff thereafter specifically requested correction of the disputed attribution and directed SLPD to its recording of her March 19, 2024 report. The version of SPR24000349 subsequently produced to Plaintiff continued to contain the disputed attribution.

9. Plaintiff does not claim a constitutional right to a perfectly accurate police report and does not rely upon reputational injury alone.

10. Plaintiff alleges that materially false governmental information attributed to her was maintained and officially used in circumstances implicating independently protected liberty interests without constitutionally adequate process.

## II. JURISDICTION AND VENUE

11. This action arises under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

12. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

13. Venue is proper under 28 U.S.C. § 1391(b) because Defendant resides in this District and the events giving rise to this action occurred within the Northern District of Texas.

## III. PARTIES

14. Plaintiff Zdenka Wilcox is an individual residing in Texas.

15. Defendant City of Southlake, Texas ("Southlake" or the "City") is a Texas home-rule municipality subject to suit under 42 U.S.C. § 1983.

16. SLPD is a department of the City and is not separately named as a defendant.

17. The SLPD personnel identified below are alleged as factual actors. Plaintiff does not seek to impose liability upon the City merely because it employed those individuals.

## IV. PLAINTIFF'S MARCH 19, 2024 REPORT

18. On March 19, 2024, Plaintiff reported incidents of domestic violence to SLPD.

19. Officer Braeden Whitman received Plaintiff's report.

20. SLPD recorded Plaintiff's statement by body-worn camera.

21. Plaintiff provided photographs depicting injuries that she attributed to domestic violence.

22. Plaintiff did not identify March 27, 2021 or May 9, 2022 as dates on which the assaults occurred.

23. Plaintiff has reviewed SLPD's body-worn-camera recording of her March 19, 2024 report. The recording does not reflect Plaintiff identifying March 27, 2021 or May 9, 2022 as assault dates.

24. Plaintiff alleges that March 27, 2021 and May 9, 2022 were dates associated with photographs rather than dates on which the underlying assaults occurred.

25. SLPD's records nevertheless associated those dates with the reported assaults.

26. In his subsequent investigation, Roberson referred in his April 24, 2024 supplemental report to “the two incident date photos that are more than 12 months apart.”

**V. DETECTIVE ROBERSON'S INVESTIGATION**

27. Detective Thomas Roberson was assigned to investigate SPR24000349.

28. Roberson reviewed Plaintiff's photographs and other information in connection with that investigation.

29. In his April 24, 2024 supplemental report, Roberson wrote: “Currently there is not sufficient evidence to establish the source of the alleged injury to Wilcox on the dates in question.”

30. Roberson further wrote: “There is not sufficient facts and or circumstances to charge Juan Duran with assault and the offense of Continuous Violence Against the Family cannot be supported by the two incident date photos that are more than 12 months apart.”

31. Roberson recommended that the case be suspended. Plaintiff does not allege that Roberson's April 24, 2024 determination was caused by flight records Duran later provided in 2025 or that Roberson then believed Plaintiff had filed a false report.

32. On July 15, 2024, attorney Frank Skipper contacted Roberson and requested a copy of SPR24000349 “for use in a civil proceeding.” Roberson forwarded the request to SLPD Records personnel.

33. Plaintiff alleges this communication only to establish that SPR24000349 was sought for use outside SLPD in civil litigation. Plaintiff does not allege that the request itself was improper or that it establishes an agreement between SLPD and Duran or his counsel.

**VI. ROBERSON'S MARCH 21, 2025 TESTIMONY**

34. On March 21, 2025, Roberson was called by Duran's counsel to testify concerning SPR24000349 in a family-law proceeding before Judge Judith Wells.

35. During direct examination, Roberson was asked, “Did you find it unreliable?” Roberson answered, “Yes, sir.” He was then asked, “Did you find it questionable?” Roberson answered, “Yes, sir.”

36. On redirect examination, Roberson was asked, “But taken as a whole, you didn't find it credible enough to move forward with the complaint; correct?” Roberson answered, “Correct.”

37. On recross-examination, Roberson was asked whether SLPD could pursue charges against a complainant if the Department believed false allegations had been made. Roberson answered, “Correct.”

38. Roberson was then asked, “But you did not do that in this case; correct?” He answered, “No.”

39. Roberson was then asked, “Did you feel like it was a false allegation?” He answered, “No.”

40. Plaintiff therefore does not allege that Roberson testified that Plaintiff filed a false report, fabricated her domestic-violence allegations, or committed a crime.

41. Roberson nevertheless testified concerning the reliability and credibility of the evidence Plaintiff supplied in SPR24000349 and communicated SLPD's investigative assessment in a judicial proceeding involving Plaintiff.

42. Plaintiff does not seek damages from Roberson and does not premise municipal liability upon his act of testifying.

43. The proceeding sought contempt relief against Plaintiff.

44. The requested contempt relief was denied.

45. Plaintiff does not allege that Judge Wells relied upon Roberson's testimony in denying or otherwise resolving the contempt request.

## VII. DURAN'S REQUEST FOR FALSE-REPORT CHARGES

46. On May 30, 2025, Duran, his wife, and his attorneys met with Roberson at SLPD concerning SPR24000349.

47. According to Roberson's June 24, 2025 supplemental report, Duran came to SLPD to present documentation concerning dates on which he asserted that “he was accused of having assaulted” Plaintiff.

48. Roberson recorded that Duran “wished to pursue charges against Zdenka Wilcox for False Report TX PC 37.08.”

49. Duran provided flight records concerning March 27, 2021 and May 9, 2022.

50. Those records reflected that Duran was in the Chicago area on March 27, 2021 and in South Korea on May 9, 2022.

51. Plaintiff does not dispute for purposes of this action what the flight records show concerning Duran's whereabouts on those dates. Plaintiff alleges that she had not identified either date as the date of an assault.

## VIII. THE JUNE 24, 2025 OFFICIAL ATTRIBUTION

52. On June 24, 2025, Roberson prepared an official supplemental report documenting the May 30 meeting.

53. Roberson wrote: “Mr. Duran provided a printout of his flight logs for the period of dates listed by Zdenka Wilcox, namely March 27, 2021, and again on May 9, 2022.”

54. Plaintiff alleges that the attribution of those dates to her was materially false because she did not identify March 27, 2021 or May 9, 2022 as dates on which the assaults occurred.

55. The June 24 supplement therefore placed in the same official SLPD record Duran's request that Plaintiff be investigated for False Report and Roberson's attribution to Plaintiff of the two dates Duran was using to support that request.

56. Plaintiff does not allege that Roberson himself concluded that Plaintiff committed the offense of False Report.

57. Plaintiff does not allege that Roberson's March 21 testimony constituted an accusation that Plaintiff committed that offense.

58. Plaintiff alleges that the June 24 supplement provides a specific governmental attribution to Plaintiff of factual representations she alleges she did not make, in the documented context of a request that SLPD pursue False Report charges against her.

## IX. SUBSEQUENT DISTRICT ATTORNEY CONSULTATION

59. On June 30, 2025, SLPD's case notes state: "Consultation request submitted to DA's Office."

60. The available notation does not identify the subject of that consultation.

61. The consultation occurred after Duran's May 30 request that SLPD pursue False Report charges against Plaintiff and after Roberson's June 24 supplement documenting that request.

62. On July 14, 2025, SLPD recorded that the consultation returned with the comment "insufficient evidence to prove this case."

63. The available notation does not identify what "this case" referred to.

64. Plaintiff therefore does not allege that the District Attorney declined to prosecute Plaintiff for False Report or that Plaintiff was prosecuted for that offense.

## X. PLAINTIFF'S REQUESTS FOR CORRECTION

65. On August 3, 2025, Plaintiff sent a written "Request to Amend Police Report - Case #SPR24000349" to SLPD Records Manager Sarah Blum.

66. Plaintiff copied Captain Jason Henninger and Chief of Police Ashleigh Casey on that request.

67. Plaintiff informed SLPD that "the current report inadvertently uses the timestamps from the photographs I submitted as the dates of the incidents themselves."

68. Plaintiff further informed SLPD that those dates were "different than the dates I communicated to the police during my initial visit."

69. Plaintiff identified March 27, 2021 as the timestamp of photographs associated with an assault she reported as occurring on or about March 20, 2021.

70. Plaintiff also identified the disputed May 9, 2022 date and requested amendment of the report to reflect what she had actually reported.

71. Plaintiff explained that the date discrepancy had been used in legal proceedings to challenge the truthfulness of her report.

72. On August 4, 2025, Chief Casey forwarded Plaintiff's correction request to Captain Henninger and instructed, "Please have someone reach out to Ms. Wilcox."

73. Accordingly, SLPD's Records Manager, Chief of Police, and Captain Henninger had received or been forwarded Plaintiff's written request identifying the alleged date error and requesting correction.

74. Plaintiff continued seeking clarification and correction.

75. On September 17, 2025, Plaintiff informed Records Manager Blum in writing that Captain Henninger had told Plaintiff during a telephone conversation the preceding day that the file Plaintiff would receive would include the amended report.

76. Plaintiff informed Blum that the materials Plaintiff received did not contain the amended report and requested a copy.

77. Plaintiff subsequently informed Blum and Henninger that the report she received still did not reflect the amendments Henninger had described and asked what amendments had been made and why they were not visible in the report she received.

78. Plaintiff further asked who was responsible for amending the report so that it accurately reflected the statements captured on SLPD's body-worn-camera recording.

79. The version of SPR24000349 subsequently produced to Plaintiff continued to contain Roberson's June 24, 2025 statement identifying March 27, 2021 and May 9, 2022 as dates "listed by Zdenka Wilcox."

**XI. REQUESTS FOR POLICY AND DECISION-MAKING RECORDS**

80. On April 6, 2026, Plaintiff's counsel submitted written Texas Public Information Act requests to SLPD and the City seeking records concerning policies, procedures, supervisory authority, policy application, and municipal decisionmaking relevant to SLPD operations.

81. Among other things, the requests sought SLPD policies and procedures governing investigation and report preparation; supervisory review and authority; communications with the District Attorney; administrative review and policy implementation; and records identifying how SLPD receives policy direction or guidance from the City.

82. A separate April 6, 2026 request directed to the City sought records identifying who holds final policymaking authority for SLPD, any delegation of policymaking authority to the Police Chief or command staff, the City's role in developing and interpreting SLPD policies, and the City's oversight and control of SLPD.

83. The requests also sought records concerning policy compliance, administrative review, internal decision-making, and the allocation of responsibility within SLPD and the City.

84. As of the filing of this Second Amended Complaint, the responses and productions received by Plaintiff have not identified or provided records sufficient to establish the policy or procedure governing substantive review, correction, annotation, or continued use of disputed police-record information, or the allocation of final policymaking authority concerning such matters, despite ruling OR2026-027050 requiring production.

85. Plaintiff does not allege that this establishes that no such policy, procedure, delegation, or mechanism exists.

## XII. CONTINUED HANDLING AFTER NOTICE

86. Plaintiff does not contend that involvement of multiple SLPD or City employees, standing alone, establishes an official municipal policy or widespread custom.

87. Plaintiff alleges that the disputed attribution appeared in SLPD records; Plaintiff specifically identified the alleged error and requested correction; the Chief of Police directed command personnel to follow up; Plaintiff continued seeking clarification concerning whether and how the report had been amended; and the version subsequently produced to Plaintiff continued to contain the June 24 attribution.

88. Plaintiff further sought records identifying the policies and allocation of decision-making authority governing relevant SLPD functions, but the responses and productions received

have not identified or provided records sufficient to establish the governing correction or review procedure or allocation of final policymaking authority.

89. Plaintiff alleges these facts as evidence of SLPD and municipal handling of the challenged information after specific notice. Plaintiff does not allege that notice or nonproduction, standing alone, establishes municipal liability.

**COUNT I**

**42 U.S.C. § 1983**

**FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS**

90. Plaintiff incorporates paragraphs 1 through 89.

91. Plaintiff does not allege that reputational injury alone constitutes a constitutional deprivation and does not allege a constitutional right to a perfectly accurate police report.

92. Plaintiff alleges that the City, through the conduct described above, maintained and officially used materially false governmental information attributed to Plaintiff in circumstances implicating Plaintiff's protected liberty interests without constitutionally adequate process.

**A. Governmental Attribution**

93. SLPD's June 24, 2025 supplemental report expressly attributed March 27, 2021 and May 9, 2022 to Plaintiff as dates "listed by Zdenka Wilcox."

94. Plaintiff alleges that this objectively verifiable attribution was false because she did not identify either date as an assault date.

95. The attribution was recorded in the same official supplement documenting that Duran had supplied evidence concerning those dates and requested that SLPD pursue False Report charges against Plaintiff.

96. Plaintiff does not allege merely that the underlying report was inaccurate. She alleges a later express governmental attribution to her of specific factual representations she did not make in circumstances in which those representations were being used to support a request for criminal investigation.

**B. Dissemination and Official Use**

97. In July 2024, Duran's attorney requested SPR24000349 from Roberson "for use in a civil proceeding."

98. In March 2025, Roberson was called by Duran's counsel and testified concerning SLPD's investigation and his assessment of the evidence in SPR24000349.

99. Roberson testified that he found the evidence "unreliable" and "questionable" and agreed that, taken as a whole, he did not find it "credible enough to move forward with the complaint."

100. Roberson also expressly testified that he did not feel Plaintiff's allegation was false.

101. Plaintiff does not base liability upon Roberson's testimony itself.

102. After that proceeding, the disputed date attribution remained in SLPD records and was expressly repeated in Roberson's June 24 supplement in the context described above.

**C. Liberty Interest and Process**

103. The March 21, 2025 proceeding occurred in ongoing family-law litigation concerning Plaintiff's parental and custodial interests and sought contempt relief against Plaintiff.

104. The requested contempt relief was denied. Plaintiff does not allege that Roberson's testimony caused an adverse contempt judgment.

105. Plaintiff specifically identified the challenged factual attribution to SLPD in writing and requested correction.

106. Plaintiff identified the disputed dates, explained the photograph-date/incident-date distinction, and directed SLPD to the statements she had actually made.

107. Chief Casey forwarded the correction request to Captain Henninger for follow-up.

108. Plaintiff thereafter continued requesting clarification and correction and sought identification of what changes, if any, had been made to the report.

109. The version of SPR24000349 subsequently produced to Plaintiff continued to contain the challenged June 24 attribution.

110. Plaintiff does not allege a freestanding constitutional right to correction of a police report.

111. Plaintiff alleges that materially false governmental information attributed to her was maintained and officially used in the circumstances alleged above after she specifically challenged its accuracy and sought review.

112. Plaintiff alleges that the foregoing deprived her of liberty without constitutionally adequate process in violation of the Fourteenth Amendment.

**COUNT II**

**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983 AND *MONELL***

113. Plaintiff incorporates paragraphs 1 through 112.

114. Plaintiff does not seek to impose respondeat-superior liability upon Southlake.

115. Municipal liability requires "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

116. Plaintiff does not allege that Roberson, Henninger, Casey, or any individual City Council member possessed final policymaking authority merely because that person exercised discretion, possessed supervisory authority, or received notice.

117. Plaintiff does not assert failure to train or failure to supervise as an independent basis for municipal liability.

118. Plaintiff does not allege that mere failure to respond to her complaint constituted ratification by a final policymaker.

**A. Municipal Procedures or Decision-making Practices**

119. Plaintiff provided specific written notice to SLPD personnel identifying the disputed attribution and requesting correction.

120. Chief Casey directed command personnel to follow up concerning Plaintiff's correction request, and Plaintiff thereafter continued seeking clarification regarding whether and how SPR24000349 had been amended.

121. The version of SPR24000349 subsequently produced to Plaintiff continued to contain the disputed June 24 attribution.

122. Plaintiff subsequently sought through written Public Information Act requests records identifying the policies and procedures governing relevant SLPD administrative and supervisory functions and the allocation of policymaking authority between SLPD and the City.

123. The responses and productions received have not identified or provided records sufficient to establish the governing procedure for substantive review, correction, annotation, or continued use of disputed police-record information, or the allocation of final policymaking authority concerning such matters.

124. Plaintiff does not allege that non-production establishes the absence of a policy or establishes the identity of a final policymaker.

125. On information and belief, based on the documented post-notice handling described above, Plaintiff alleges that the continued treatment of the disputed attribution resulted from the City's procedures or decision-making practices governing review and correction of challenged SLPD records.

126. The factual basis for that allegation includes Plaintiff's specific written notice, command-level referral for follow-up, subsequent communications concerning amendment of the report, continued presence of the disputed attribution in the records produced to Plaintiff, and Plaintiff's efforts to obtain records identifying the governing procedures and allocation of authority.

127. Plaintiff does not presently allege a widespread pattern of similar constitutional violations involving other persons and does not rely upon respondeat superior, supervisory status, or mere failure to respond as establishing municipal liability.

128. The identity of the relevant final policymaker, the City's governing procedures, the allocation of authority between City and SLPD personnel, the disposition of Plaintiff's correction request, and the treatment of comparable disputed-record requests are matters principally within Defendant's possession and control.

**B. Moving Force**

129. Plaintiff alleges that the municipal procedures or decision-making practices described above caused the disputed attribution to remain in official City records after Plaintiff specifically challenged its accuracy and requested review.

130. Plaintiff further alleges that the continued municipal handling of the disputed information without substantive correction caused the challenged attribution to remain available for continued official use.

131. Plaintiff alleges that the municipal procedures or decision-making practices were the moving force behind the constitutional deprivation alleged in Count I.

## XIII. INJURY AND RELIEF

132. As a direct and proximate result of the conduct alleged above, Plaintiff has suffered injury from the official maintenance and use of materially inaccurate governmental information concerning her domestic-violence report.

133. Plaintiff has suffered reputational and litigation-related injury and other damages to be established through discovery and at trial.

134. Plaintiff does not rely upon reputational injury or litigation expense alone as the constitutional deprivation required for Count I.

135. Plaintiff alleges continuing injury from the maintenance of the challenged attribution in official SLPD records and its availability for future official use.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. enter judgment in Plaintiff's favor and against Defendant City of Southlake;

B. award compensatory damages in an amount determined by the trier of fact;

C. award appropriate declaratory relief;

D. to the extent Plaintiff establishes standing and the requirements for prospective relief, award narrowly tailored prospective relief addressing the continued official maintenance or future official use of the challenged attribution;

E. award taxable costs and attorney's fees to the extent recoverable under 42 U.S.C. § 1988; and

F. grant such other and further relief as the Court deems just and proper.

## XV. JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**/s/ Brian D. Wilcox**
Brian D. Wilcox
State Bar No. CA 244096
State Bar No. TX 24153547
Brian D. Wilcox Law, PLLC
Southlake, Texas 76092
Telephone: 949-533-7530
Email: Brian@BrianDWilcoxLaw.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I electronically filed the foregoing **PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

**/s/ Brian D. Wilcox**
Brian D. Wilcox