**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **ZDENKA WILCOX,** | § | **Civil Action No. 4:26-cv-147** |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| **CITY OF SOUTHLAKE, TEXAS;** | § | |
| **JOHN/JANE DOES 1–5,** | § | |
| **in their individual and official capacities,** | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF SOUTHLAKE, TEXAS' SECOND AMENDED MOTION TO DISMISS**

**USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

Plaintiff discloses pursuant to N.D. Tex. L.R. 7.2(f) that generative artificial intelligence was used in the preparation and revision of this brief. Plaintiff independently reviewed the factual assertions, record citations, legal authorities, and arguments contained herein.

**TABLE OF CONTENTS**

I. INTRODUCTION ....1

II. RELEVANT PROCEDURAL BACKGROUND ....2

III. RULE 12(b)(6) STANDARD ....3

IV. THE SAC PLEADS A CONCRETE FALSE GOVERNMENTAL ATTRIBUTION THAT, IN CONTEXT, PLAUSIBLY ASSERTS WRONGDOING ....4

V. THE SAC DOES NOT ASSERT A FREESTANDING CONSTITUTIONAL RIGHT TO AN ACCURATE POLICE REPORT ....7

VI. THE SAC PLEADS MORE THAN REPUTATIONAL INJURY AND IDENTIFIES AN INDEPENDENTLY PROTECTED LIBERTY INTEREST ....7

VII. THE SAC PLAUSIBLY PLEADS THE MUNICIPAL THEORY ACTUALLY ASSERTED IN COUNT II ....10

A. Count II identifies the municipal function and the factual basis for the municipal inference pleaded ....11

B. Count II does not rely on a widespread-custom theory ....12

C. The SAC does not treat Plaintiff's information requests as proof of a policy or policymaker, and the unresolved allocation of policymaking authority is not a pleading defect ....13

D. Count II pleads a direct causal link between the challenged municipal process and the post-notice deprivation alleged in Count I ....15

VIII. BRISCOE DOES NOT RESOLVE THE CLAIMS ACTUALLY PLEADED AGAINST THE CITY ....17

IX. THE CITY'S REMEDIES ARGUMENT DOES NOT PROVIDE AN INDEPENDENT BASIS TO DISMISS COUNTS I AND II ....18

X. DISMISSAL WITH PREJUDICE IS NOT WARRANTED ....19

XI. CONCLUSION ....21

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................4
*Banks v. Herbrich*, 90 F.4th 407 (5th Cir. 2024) ....................8
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................4
*Briscoe v. LaHue*, 460 U.S. 325 (1983) ....................17, 18
*Foman v. Davis*, 371 U.S. 178 (1962) ....................20
*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) .20
*Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016) ....................14, 15
*Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719 (5th Cir. 2018) ....................14
*Merriott v. City of Bossier City*, 179 F.4th 393 (5th Cir. 2026) ....................15
*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ....................19
*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ....................10, 15
*Rehberg v. Paulk*, 566 U.S. 356 (2012) ....................18
*San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697 (5th Cir. 1991) ....................7, 9
*Santosky v. Kramer*, 455 U.S. 745 (1982) ....................8
*State v. Thompson*, 70 F.3d 390 (5th Cir. 1995) ....................7, 9
*Thompson v. McGehee*, 183 F.4th 353 (5th Cir. 2026) ....................14, 15
*Troxel v. Granville*, 530 U.S. 57 (2000) ....................8

## STATUTES

42 U.S.C. § 1983 ....................10, 17-19
Tex. Penal Code § 37.08 ....................1, 5

## RULES

Fed. R. Civ. P. 8(a)(3) ....................18
Fed. R. Civ. P. 11(b) ....................20
Fed. R. Civ. P. 12(b)(6) ....................2-4, 6, 13, 17
Fed. R. Civ. P. 15(a)(2) ....................20

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF SOUTHLAKE, TEXAS' SECOND AMENDED MOTION TO DISMISS**

Plaintiff Zdenka Wilcox files this Response in Opposition to Defendant City of Southlake, Texas' Second Amended Motion to Dismiss [ECF No. 28] and respectfully shows:

## I. INTRODUCTION

The City's Motion does not squarely address the claim pleaded in the Second Amended Complaint ("SAC"). Its principal stigma argument is that Detective Thomas Roberson did not testify on March 21, 2025 that Plaintiff filed a false report, fabricated domestic-violence allegations, or committed a crime. Mot. 8–9. The SAC expressly agrees and does not base liability upon Roberson's testimony itself. SAC ¶¶40, 42, 56–57, 101.

The SAC also pleads what occurred afterward. On June 24, 2025, Roberson prepared an official SLPD supplement documenting Juan Duran's request that SLPD pursue Plaintiff for False Report under Texas Penal Code § 37.08. SAC ¶¶46–53. In that supplement, Roberson wrote that Duran supplied flight logs "for the period of dates listed by Zdenka Wilcox, namely March 27, 2021, and again on May 9, 2022." SAC ¶53. Plaintiff alleges that attribution was materially false because she did not identify either date as an assault date. SAC ¶¶2–6, 51, 54.

The SAC therefore does not change theories; it supplies the factual specificity the prior pleading lacked. It pleads what Roberson said at the March 21 hearing, what he expressly did not say, and what he later attributed to Plaintiff in the June 24 official supplement. Those allegations identify the governmental actor, the official proceedings and document involved, the precise factual representation attributed to Plaintiff, its alleged falsity, and the context in which it was made. SAC ¶¶34–58.

That directly addresses the deficiency identified in the Court's July 23 Order, which found the prior pleading lacked sufficient factual content to determine whether Roberson had made

assertions of wrongdoing. ECF No. 23 at 5–6. The SAC now pleads the testimony itself, acknowledges its limits, and separately pleads the later June 24 attribution. The City nevertheless returns primarily to what Roberson did not say from the witness stand. Mot. 8–9. That attacks a theory the SAC expressly does not assert.

The City similarly dismisses Plaintiff's correction requests, requests for policy and decision-making records, and allegations concerning continued handling after notice as "immaterial." Mot. 4–5. Plaintiff does not contend that those allegations transform an inaccurate police report into a constitutional claim. They are relevant because they concern what occurred after Plaintiff challenged the attribution and requested review, including the post-notice municipal conduct pleaded in Count II.

The Rule 12(b)(6) questions are therefore narrower: whether the June 24 factual attribution, considered in context, plausibly satisfies the stigma component; whether the SAC pleads the distinct infringement required by stigma-plus doctrine; and, if Count I survives, whether the post-notice municipal procedures or decision-making practices alleged in Count II plausibly satisfy *Monell*.

The Court should deny the Motion.

**II. RELEVANT PROCEDURAL BACKGROUND**

The Court's July 23, 2026 Order dismissed the First Amended Complaint without prejudice and permitted amendment "to the extent" Plaintiff could remedy the deficiencies identified by the Court. ECF No. 23. As to stigma-plus, the Court found the prior allegations concerning Roberson's later testimony too conclusory because they lacked sufficient factual content to determine whether he had made assertions of wrongdoing by Plaintiff. ECF No. 23 at 5–6.

The SAC now pleads that testimony. SAC ¶¶34–40. Roberson described the evidence as "unreliable" and "questionable" and testified that, taken as a whole, he did not find it credible enough to move forward. SAC ¶¶34–36. But when asked whether he believed Plaintiff's allegation was false, he answered, "No." SAC ¶39. The SAC therefore does not allege that Roberson testified that Plaintiff filed a false report, fabricated her allegations, or committed a crime. SAC ¶40.

The SAC also pleads what occurred afterward. On May 30, 2025, Duran met with Roberson, presented flight records concerning March 27, 2021 and May 9, 2022, and requested that SLPD pursue Plaintiff for False Report. SAC ¶¶46–51. On June 24, Roberson documented that meeting in an official supplement and described the flight records as covering dates "listed by Zdenka Wilcox." SAC ¶¶52–53. Plaintiff alleges that attribution was materially false because she had not identified either date as an assault date. SAC ¶54.

The SAC places those events within SPR24000349's prior use outside SLPD. Duran's attorney requested the report in July 2024 "for use in a civil proceeding," and Roberson later testified concerning the investigation and SLPD's assessment of the evidence in that proceeding. SAC ¶¶32–45, 97–101. The SAC further pleads Plaintiff's subsequent correction request, referral through SLPD command personnel, communications concerning amendment, and the continued presence of the challenged statement in the version later produced to Plaintiff. SAC ¶¶65–79, 105–11.

Those amended allegations, rather than theories expressly disclaimed by the SAC, govern the present Motion.

**III. RULE 12(b)(6) STANDARD**

To survive Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts permit a reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

The Court accepts well-pleaded factual allegations as true but not legal conclusions. *Id*. at 678–79. The question is pleading sufficiency, not whether Plaintiff has already proved the claim.

## IV. THE SAC PLEADS A CONCRETE FALSE GOVERNMENTAL ATTRIBUTION THAT, IN CONTEXT, PLAUSIBLY ASSERTS WRONGDOING

The City's principal stigma argument focuses on what Roberson did not say during his March 21 testimony. He did not testify that Plaintiff filed a false report, fabricated her domestic-violence allegations, or committed a crime. Mot. 8–9. The SAC expressly agrees and does not premise liability on Roberson's testimony itself. SAC ¶¶40, 42, 56–57, 101.

The testimony matters because it establishes the factual baseline for what followed. Roberson described aspects of the evidence as "unreliable" and "questionable" and testified that, taken as a whole, he did not consider it sufficient to move forward. SAC ¶¶34–36. But when asked directly whether he believed Plaintiff's allegation was false, he answered, "No." SAC ¶39.

After Duran later sought False Report charges, Roberson himself prepared the June 24 official supplement and wrote:

> "Mr. Duran provided a printout of his flight logs for the period of dates listed by Zdenka Wilcox, namely March 27, 2021, and again on May 9, 2022." SAC ¶53.

Plaintiff alleges that attribution was false because she did not identify either date as one on which an assault occurred. SAC ¶¶2–6, 21–25, 51, 54. The challenged governmental statement

therefore is not Duran's accusation that Plaintiff committed False Report. It is Roberson's own factual attribution to Plaintiff of dates she alleges she never supplied as assault dates.

That attribution matters because Duran's flight records could appear to undermine Plaintiff's report only if the disputed dates were treated as dates Plaintiff herself had identified for the assaults. Without that attribution, Duran's whereabouts on March 27, 2021 and May 9, 2022 would establish only where he was on those dates. They would not establish that Plaintiff falsely reported assaults as occurring then. Roberson's statement that the flight records concerned dates "listed by Zdenka Wilcox" supplied the factual premise connecting Duran's purported alibi evidence to the truthfulness of Plaintiff's report.

The alleged falsity itself is not inferential. Whether Plaintiff had "listed" March 27, 2021 and May 9, 2022 as assault dates is an objectively verifiable factual proposition attributed to her by Roberson in the official record. The contextual inference concerns the significance of that concrete attribution when it appeared alongside Duran's request for False Report charges and the flight records offered to contradict those same dates. SAC ¶¶46–58.

The supplement's context reinforces that inference. It documented that Duran "wished to pursue charges against Zdenka Wilcox for False Report TX PC 37.08" and that he supplied flight records concerning the same disputed dates. SAC ¶¶46–55. Read together, the allegations plausibly support the inference that the official record represented Plaintiff as having identified assault dates contradicted by Duran's flight records.

The § 37.08 context reinforces the significance of the attribution: by treating the disputed dates as dates Plaintiff herself had identified, the supplement supplied the factual premise by which Duran's flight records could be offered to challenge the truthfulness of Plaintiff's report in support of his request for False Report charges.

That is materially different from merely recording a private citizen's accusation. The SAC does not attribute Duran's accusation to Roberson. It alleges that Roberson himself supplied the factual attribution that Plaintiff had "listed" the two dates and placed that attribution in the official record alongside Duran's request for False Report charges and his purported alibi evidence. SAC ¶¶46–58. The stigma allegation rests on that affirmative governmental attribution and the function it served in context, not on an allegation that Roberson expressly declared Plaintiff guilty of a crime.

Those allegations address the deficiency identified in the Court's prior Order. The earlier pleading lacked the factual content necessary to determine whether a state actor had made a concrete false assertion of wrongdoing. ECF No. 23 at 4–6. The SAC now identifies the speaker, official document, precise statement, alleged falsity, and criminal-investigative context. SAC ¶¶46–58.

The question is therefore not whether Plaintiff has a constitutional right to an error-free police report. It is whether Roberson's affirmative attribution of the disputed dates to Plaintiff, considered with his prior testimony, Duran's request for False Report charges, and the purported alibi evidence directed to those dates, plausibly constitutes a concrete false governmental assertion of wrongdoing.

At Rule 12(b)(6), that question must be resolved from the well-pleaded allegations and reasonable inferences they support, not by isolating Duran's accusation from Roberson's factual attribution or returning exclusively to testimony the SAC expressly alleges did not accuse Plaintiff of a crime.

## V. THE SAC DOES NOT ASSERT A FREESTANDING CONSTITUTIONAL RIGHT TO AN ACCURATE POLICE REPORT

The City characterizes Plaintiff's claim as dissatisfaction with dates in a police report and with Roberson's assessment of her evidence. Mot. 5–8. The SAC expressly forecloses that characterization.

Paragraph 9 states: "Plaintiff does not claim a constitutional right to a perfectly accurate police report and does not rely upon reputational injury alone." SAC ¶9. Plaintiff therefore does not contend that every factual error in a police record creates a federal due-process claim or that she had a constitutional right to a particular investigative conclusion.

The pleaded stigma allegation instead concerns the later affirmative attribution that March 27, 2021 and May 9, 2022 were dates "listed by Zdenka Wilcox," when Plaintiff alleges she did not identify those dates as assault dates. SAC ¶¶52–58.

Accordingly, the City's accurate-report argument does not resolve the claim actually pleaded.

## VI. THE SAC PLEADS MORE THAN REPUTATIONAL INJURY AND IDENTIFIES AN INDEPENDENTLY PROTECTED LIBERTY INTEREST

The Court previously held that stigma alone is insufficient and that the required "plus" must consist of an infringement beyond reputational harm, including deprivation of another legal right or status. ECF No. 23 at 4–6. The City argues that the SAC still fails because Plaintiff has not alleged any "tangible injury and/or damage" attributable to the report, supplemental report, or testimony. Mot. 9.

The SAC expressly distinguishes the claim pleaded from theories Plaintiff does not assert. The March 21 contempt request was denied, and Plaintiff does not allege that Roberson's testimony resulted in an adverse contempt judgment, that Roberson concluded she committed False Report, that his testimony accused her of an offense, or that she was ultimately prosecuted for False

Report. SAC ¶¶43–45, 56–57, 64. Nor could the June 24 supplement have been used at the March 21 hearing because it did not yet exist.

Those absences do not reduce Count I to reputational injury. The Fifth Circuit requires stigma accompanied by infringement of a distinct protected interest. *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697, 701–02 (5th Cir. 1991); *State v. Thompson*, 70 F.3d 390, 392 (5th Cir. 1995). The inquiry asks whether the State sought to remove or significantly alter a life, liberty, or property interest recognized and protected by law. *Kacal*, 928 F.2d at 701–02; *Thompson*, 70 F.3d at 392. The City's "tangible injury and/or damage" formulation is therefore not itself the governing test. The Fifth Circuit asks whether the State sought to remove or significantly alter the identified protected interest, rather than merely whether Plaintiff alleges an additional category of consequential damages flowing from injury to reputation.

The SAC identifies such an interest. The March 21 proceeding occurred in ongoing family-law litigation concerning Plaintiff's parental and custodial interests. SAC ¶103. A parent's interest in the care, custody, and control of her children is a protected liberty interest under the Fourteenth Amendment. *Troxel v. Granville*, 530 U.S. 57, 65–66 (2000); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); see also *Banks v. Herbrich*, 90 F.4th 407, 413 (5th Cir. 2024).

The chronology changed after that hearing. On May 30, Duran returned to SLPD, presented flight records concerning March 27, 2021 and May 9, 2022, and requested that SLPD pursue Plaintiff for False Report. SAC ¶¶46–51. On June 24, Roberson prepared the official supplement documenting that request and attributed those dates to Plaintiff as dates "listed by Zdenka Wilcox." SAC ¶¶52–58. Plaintiff alleges that attribution was false because she had not identified either date as an assault date. SAC ¶54.

Six days later, SLPD recorded that a "Consultation request [was] submitted to DA's Office," and on July 14 recorded the response "insufficient evidence to prove this case." SAC ¶¶59, 62. The SAC does not allege what matter was submitted for consultation, what "this case" referred to, that the District Attorney declined to prosecute Plaintiff for False Report, or that Plaintiff was prosecuted. SAC ¶¶60, 63–64. The consultation nevertheless remains part of the governmental chronology immediately following an official supplement documenting Duran's request for criminal charges and containing the challenged attribution.

That sequence distinguishes the claim from one based merely on inaccurate information sitting passively in an internal police file. Before June 24, Duran's attorney had requested SPR24000349 "for use in a civil proceeding," and Roberson had testified concerning the investigation and SLPD's assessment of Plaintiff's evidence in ongoing family-law litigation involving Plaintiff's parental and custodial interests. SAC ¶¶32–45, 97–103. Afterward, Plaintiff specifically challenged the attribution, explained the photograph-date and incident-date distinction, directed SLPD to her recorded statement, and requested correction. SAC ¶¶65–79, 105–08. The attribution nevertheless remained in the official record later produced to Plaintiff and, she alleges, remained available for continued official use. SAC ¶¶79, 109, 135.

The SAC does not offer those allegations to establish that inaccurate information in a police report, standing alone, constitutes a constitutional deprivation. SAC ¶¶91, 110. Nor does Plaintiff rely upon reputational harm or litigation expense alone as the required infringement. SAC ¶134. Rather, she alleges a concrete false governmental attribution in an official record already used in proceedings involving protected family interests, created in the documented context of a request for criminal investigation, followed days later by a prosecutorial consultation, and thereafter maintained despite specific notice challenging its factual basis. SAC ¶¶92–112.

The City treats the absence of those particular outcomes as dispositive of the "plus" element. Mot. 9–10. But the governing inquiry is whether the pleaded stigma was accompanied by governmental conduct that sought to remove or significantly alter the independently protected interest identified in the SAC. *State v. Thompson*, 70 F.3d at 392–93; *Kacal*, 928 F.2d at 701–04. Taken together and with the reasonable inferences they support, the pleaded allegations describe more than reputational injury. The City's characterization of the SAC as alleging no tangible "plus" does not address the claim in its full factual sequence.

**VII. THE SAC PLAUSIBLY PLEADS THE MUNICIPAL THEORY ACTUALLY ASSERTED IN COUNT II**

Municipal liability under § 1983 requires a policymaker, an official policy or custom, and a constitutional violation whose moving force is that policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Liability cannot rest on respondeat superior, and the challenged conduct must be attributable to the municipality itself. *Id*. at 578–80.

The City devotes little independent analysis to the amended Monell allegations, instead characterizing Count II as "conclusory contentions mixed with rote regurgitation of Monell buzzwords." Mot. 10. But the renewed Motion does not meaningfully address the factual structure added in ¶¶119–31, including the post-notice handling, identified municipal function, factual basis for the municipal inference, and unresolved questions concerning policymaking authority and delegation.

The prior Order dismissed the earlier Monell claim because Plaintiff had not adequately pleaded the predicate constitutional violation. ECF No. 23 at 6. The SAC now pleads a narrower municipal theory tied to the post-notice review, correction, and continued treatment of the challenged attribution. SAC ¶¶119–31.

It also defines what that theory is not. Count II does not rely on respondeat superior, SAC ¶114; does not infer final policymaking authority merely from rank, discretion, supervision, or notice, SAC ¶116; does not assert failure to train or supervise as an independent theory, SAC ¶117; and does not plead ratification merely from failure to respond, SAC ¶118. Nor does it presently rely on a widespread pattern of similar constitutional violations involving other persons. SAC ¶127. Instead, Count II alleges that the post-notice treatment of the challenged attribution resulted from City procedures or decision-making practices governing review and correction of challenged SLPD records, identifies the factual basis for that inference, and alleges that the governing procedures, allocation of authority, any relevant delegation, disposition of Plaintiff's correction request, and treatment of comparable requests remain principally within Defendant's possession and control. SAC ¶¶125–28.

The Court should evaluate that municipal theory as actually pleaded.

**A. Count II identifies the municipal function and the factual basis for the municipal inference pleaded**

After Plaintiff challenged the June 24 attribution, the SAC alleges specific written notice, referral through SLPD command personnel, communications concerning correction, and the continued presence of the challenged attribution in the version later produced to Plaintiff. SAC ¶¶65–79, 119–21.

The municipal inference does not arise from noncorrection alone. It arises from the pleaded sequence in which Plaintiff invoked the City's review process, the Police Chief directed follow-up through command personnel, City personnel addressed the correction request, and the challenged attribution remained after that municipal process had been invoked. SAC ¶¶65–79, 119–26.

Against that factual sequence, Plaintiff alleges on information and belief that "the continued treatment of the disputed attribution resulted from the City's procedures or decision-making practices governing review and correction of challenged SLPD records." SAC ¶125. Paragraph 126 identifies the basis for that inference: written notice, command-level referral, subsequent communications concerning amendment, continued presence of the attribution in the record produced to Plaintiff, and efforts to identify the governing procedures and allocation of authority. SAC ¶126.

The SAC therefore does not allege as an established fact that a particular written policy required retention of the attribution, nor does it infer municipal liability merely because several City employees became involved. SAC ¶¶86, 114, 116. The allegation is narrower: the post-notice handling supports a plausible inference that an institutional procedure or decision-making practice governing review and correction resulted in the continued treatment of the attribution. SAC ¶¶125–26.

Count II alleges that the procedures or decision-making practices governing that process caused the attribution to remain after specific notice and review were sought. SAC ¶¶125, 129–31. The City labels Count II "conclusory contentions mixed with rote regurgitation of Monell buzzwords," Mot. 10, but does not explain why the factual sequence pleaded in ¶126 cannot support the municipal inference actually asserted.

**B. Count II does not rely on a widespread-custom theory**

The SAC states that Plaintiff "does not presently allege a widespread pattern of similar constitutional violations involving other persons." SAC ¶127. Count II therefore does not ask the Court to infer a persistent and widespread municipal custom from the handling of Plaintiff's correction request alone.

Nor does Count II depend on an anticipated widespread pattern to state the present claim. It rests on the municipal handling alleged in ¶¶119–26 and the resulting inference concerning the procedures or decision-making practices governing review and correction of challenged SLPD records. Paragraph 128 identifies the treatment of comparable disputed-record requests as information principally within Defendant's possession and control; it does not make proof of a widespread pattern an element of the theory presently pleaded.

The question at this stage is therefore whether the pleaded municipal function, the factual sequence supporting the alleged review-and-correction practice, and the allegations concerning policymaking authority or delegation plausibly support municipal attribution under Rule 12(b)(6). The SAC does not ask the Court to supply a widespread custom that Plaintiff has not pleaded.

**C. The SAC does not treat Plaintiff's information requests as proof of a policy or policymaker, and the unresolved allocation of policymaking authority is not a pleading defect**

Plaintiff sought records concerning policies, administrative review, final policymaking authority, delegation, and the allocation of responsibility between SLPD and the City. SAC ¶¶80–83. The productions received did not identify records sufficient to establish the governing review or correction procedure or allocation of final policymaking authority. SAC ¶84.

Critically, Plaintiff does not treat that nonproduction as substantive proof of her Monell claim. The SAC expressly alleges that it does not establish the absence of a policy, procedure, delegation, or mechanism, SAC ¶85, and Count II likewise states that nonproduction does not establish either the absence of a policy or the identity of a final policymaker. SAC ¶124. Those allegations instead explain Plaintiff's efforts to identify the internal municipal structure and provide context for the information-and-belief allegation in ¶125.

The Fifth Circuit does not require a complaint to identify the particular policymaker by name where the pleaded facts otherwise support municipal attribution. *Groden v. City of Dallas*, 826 F.3d 280, 285–86 (5th Cir. 2016). *Groden* does not eliminate the requirement that the challenged policy ultimately be attributable to a legally authorized policymaker; it establishes that the policymaker's specific identity need not itself be pleaded.

The Fifth Circuit's recent decision in *Thompson v. McGehee*, 183 F.4th 353, 372 (5th Cir. 2026), is also instructive. Policymaking authority may be delegated formally, but a municipality may also, through its conduct or practice, encourage or acknowledge an official in a policymaking role. *Id*. The court declined at the pleading stage to determine whether such functional delegation had occurred because the factual record was insufficiently developed. *Id*. Thus, the absence of an identified written delegation does not itself resolve whether authority was retained, formally delegated, or functionally delegated through municipal conduct or practice.

The SAC does not infer final policymaking authority merely from rank, discretion, supervision, or notice. SAC ¶116. It instead alleges that the governing procedures, allocation of authority, any relevant delegation, disposition of Plaintiff's correction request, and treatment of comparable disputed-record requests remain principally within Defendant's possession and control. SAC ¶128. The failure to name a particular policymaker therefore does not resolve the attribution question at the pleading stage.

Nor is the SAC's information-and-belief allegation untethered from facts. The Fifth Circuit permits such pleading where essential information is peculiarly within the opposing party's possession and factual allegations make the inference plausible. *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc*., 892 F.3d 719, 730 (5th Cir. 2018). Paragraph

126 identifies the factual basis for the municipal inference, while ¶128 identifies the matters alleged to remain principally within Defendant's control.

Neither *Groden* nor *Thompson* excuses the *Monell* elements. *Groden* establishes that the particular policymaker need not be identified by name in the complaint where the pleaded facts otherwise support attribution to a legally authorized policymaker. *Thompson* establishes that whether such authority has been functionally delegated may remain unresolved where the pleading-stage record is insufficiently developed.

The renewed Motion does not engage that pleading structure. It characterizes Count II as "conclusory contentions mixed with rote regurgitation of *Monell* buzzwords," Mot. 10, but does not explain why ¶¶119–28 fail to support the municipal inference actually pleaded.

**D. Count II pleads a direct causal link between the challenged municipal process and the post-notice deprivation alleged in Count I**

The moving-force requirement demands a direct causal link between the challenged municipal action and the alleged constitutional deprivation. *Piotrowski*, 237 F.3d at 580. See also *Merriott v. City of Bossier City*, 179 F.4th 393, 413 (5th Cir. 2026).

Count II pleads that causal link narrowly and chronologically. It does not allege that a City policy or the later review process caused Roberson to create the June 24 attribution. Plaintiff's correction request came afterward, and the SAC keeps those events distinct. SAC ¶¶52–58, 65–79.

The municipal causation alleged in Count II begins after Plaintiff specifically challenged the attribution and invoked review and correction. Paragraph 129 alleges that the City procedures or decision-making practices identified in ¶125 "caused the disputed attribution to remain in official City records after Plaintiff specifically challenged its accuracy and requested review." Paragraph 130 alleges that the continued municipal handling without substantive correction caused the

attribution to remain available for continued official use. Paragraph 131 alleges that those procedures or practices were the moving force behind the constitutional deprivation alleged in Count I.

That theory tracks the deprivation pleaded in Count I. Count I alleges not merely the creation of the June 24 attribution, but the maintenance and official use of materially false governmental information after Plaintiff challenged its accuracy and sought review. SAC ¶¶92, 105–12. The challenged municipal process and alleged post-notice deprivation therefore concern the same conduct and period.

The pleaded sequence supplies the factual basis for that causal inference. Plaintiff identified the attribution in writing, explained why it was inaccurate, directed SLPD to the recording of her original report, and requested correction. SAC ¶¶65–71, 105–06. Chief Casey referred the matter for follow-up, and Plaintiff continued seeking clarification concerning whether and how the report had been amended. SAC ¶¶72–78, 107–08. The attribution nevertheless remained in the official record subsequently produced to Plaintiff. SAC ¶¶79, 109, 121.

Count II therefore does not allege that the post-notice result was simply the consequence of Roberson having authored the original supplement. It alleges that the City procedures or decision-making practices governing review and correction caused the challenged attribution to remain after the alleged error had been specifically presented for municipal review. SAC ¶¶125–31. That is the municipal action Plaintiff alleges as the moving force.

That causal theory also does not depend upon attributing Duran's later conduct, any judicial decision, or any unidentified prosecutorial action to the City. Nor does Plaintiff seek to hold the City liable merely because Roberson authored the June 24 statement. SAC ¶114. The pleaded causal link runs from the municipal process governing post-notice review and correction to the

continued maintenance and availability for official use alleged as part of the deprivation in Count I.

Count II necessarily depends upon a viable constitutional deprivation under Count I. But if Count I states such a claim, the renewed Motion does not separately explain why the post-notice causal allegations in ¶¶129–31 fail the moving-force requirement. Nor does it meaningfully address the identified municipal function, the factual basis for the municipal inference, the unresolved allocation and delegation of policymaking authority, or the causal connection alleged between the challenged municipal process and Count I.

Taken together, ¶¶119–31 plead more than respondeat superior or a formulaic recitation of *Monell*. They identify the municipal function, the factual sequence supporting the inference of City procedures or decision-making practices, the unresolved policymaking questions, and the causal connection between the challenged municipal process and the constitutional deprivation alleged in Count I. At Rule 12(b)(6), the City's characterization of those allegations as "Monell buzzwords" does not establish that Count II is implausible.

## VIII. *BRISCOE* DOES NOT RESOLVE THE CLAIMS ACTUALLY PLEADED AGAINST THE CITY

The City invokes *Briscoe v. LaHue*, 460 U.S. 325 (1983), concerning absolute witness immunity for testimony in judicial proceedings. Mot. 10–12.

Plaintiff does not dispute that rule. But the SAC does not seek damages from Roberson based on his March 21 testimony and expressly does not premise municipal liability on his act of testifying. SAC ¶¶42, 101.

The City nevertheless extends *Briscoe* beyond the testimony itself, asserting that its rationale is "illustrative of the absence of any constitutional violations or cognizable claims arising from

either Det. Roberson's reports and/or his courtroom testimony." Mot. 11. *Briscoe* does not establish that broader proposition.

Absolute witness immunity protects testimony. *Briscoe v. LaHue*, 460 U.S. 325, 328–29 (1983). *Rehberg* extends that protection to certain preparatory activity closely tied to testimony, while making clear that absolute immunity does not extend to all out-of-court conduct by a witness. *Rehberg v. Paulk*, 566 U.S. 356, 367–70 & 369 n.1 (2012). The June 24 supplement was not Roberson's testimony. It was an official SLPD record prepared three months after the March 21 hearing to document a later May 30 meeting and Duran's request that SLPD pursue False Report charges. SAC ¶¶46–58. Nor does Count II impose municipal liability because Roberson testified; it concerns the alleged municipal treatment of the challenged attribution after Plaintiff sought review and correction. SAC ¶¶119–31.

Accordingly, *Briscoe* forecloses a damages claim against Roberson based on his testimony, a claim the SAC does not assert. It does not resolve whether the separate June 24 governmental attribution and subsequent municipal conduct state claims against the City.

## IX. THE CITY'S REMEDIES ARGUMENT DOES NOT PROVIDE AN INDEPENDENT BASIS TO DISMISS COUNTS I AND II

The City argues that Plaintiff's requests for declaratory and prospective relief are not independently viable because the Declaratory Judgment Act does not create a separate cause of action and those remedies depend upon a viable underlying constitutional claim. Mot. 12. Plaintiff does not plead otherwise. The SAC asserts substantive claims under § 1983 and requests appropriate remedies if those claims are established. That the requested relief appears in the Prayer is not a pleading deficiency. Rule 8(a)(3) expressly requires "a demand for the relief sought."

Nor does the derivative nature of the requested relief provide a basis for dismissal while the underlying § 1983 claims remain viable. *Monell* recognizes that municipalities may be sued directly under § 1983 for monetary, declaratory, or injunctive relief when the constitutional deprivation is attributable to municipal policy. *Monell v. Department of Social Services*, 436 U.S. 658, 690-691 (1978).

The City's cited authorities establish only that the Declaratory Judgment Act supplies a remedy rather than an independent substantive cause of action. Indeed, the City's argument is expressly derivative: it contends that dismissal of the substantive claims would also dispose of the requested declaratory and prospective relief. Mot. 12.

The SAC also does not demand prospective relief unconditionally. It alleges continuing injury from maintenance of the challenged attribution in official SLPD records and its availability for future official use, SAC ¶135, and requests prospective relief only "to the extent Plaintiff establishes standing and the requirements for prospective relief." SAC Prayer ¶D.

Accordingly, if Counts I and II survive, the City's derivative-remedy argument supplies no independent basis to dismiss them. Whether Plaintiff ultimately establishes entitlement to declaratory or prospective relief may be addressed under the standards governing those remedies on the developed record.

**X. DISMISSAL WITH PREJUDICE IS NOT WARRANTED**

The City contends that Plaintiff has had "three chances to plead her best case" and asks that the litigation be finally dismissed. Mot. 1. Its proposed order would dismiss the City with prejudice. That characterization overlooks the procedural posture. The July 23 Order dismissed the First Amended Complaint without prejudice and expressly permitted amendment to remedy the

deficiencies identified by the Court. ECF No. 23. The SAC is the pleading filed in response to that Order, and it does not merely repeat the pleading previously dismissed.

The Court identified uncertainty concerning whether Roberson's later testimony contained assertions of wrongdoing by Plaintiff. ECF No. 23 at 5–6. The SAC responded by pleading the pertinent testimony, acknowledging what it did not establish, and disclaiming liability based upon the testimony itself. SAC ¶¶34–45, 101. It then separately pleaded the June 24 governmental attribution, its alleged falsity and context, Plaintiff's correction request, and a narrowed municipal theory concerning post-notice handling. SAC ¶¶46–89, 93–131. Thus, the relevant history is not one of simply repeating the same allegations after the Court identified a deficiency.

Fed. R. Civ. P. 15(a)(2) directs that leave to amend should be freely given when justice so requires. Relevant considerations include futility, undue delay, bad faith, prejudice, and repeated failure to cure deficiencies previously allowed. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Fifth Circuit recognizes that, given the consequences of dismissal on the pleadings, district courts often afford a plaintiff an opportunity to cure pleading deficiencies before dismissal unless the defects are clearly incurable or the plaintiff is unwilling or unable to amend in a manner that would avoid dismissal. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329–30 (5th Cir. 2002).

Plaintiff's primary position is that the SAC states plausible claims and the Motion should be denied. But if the Court identifies a remaining deficiency that turns on additional factual specificity and can be cured consistently with Rule 11(b), Plaintiff specifically requests leave under Rule 15(a)(2) to address that deficiency rather than dismissal with prejudice.

The City's assertion that Plaintiff has already pleaded her "best case" does not itself establish futility. If the Court concludes that additional factual specificity could cure a remaining defect, dismissal with prejudice would unnecessarily foreclose that opportunity.

**XI. CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny Defendant City of Southlake, Texas' Second Amended Motion to Dismiss [ECF No. 28].

Alternatively, if the Court determines that a remaining pleading deficiency is curable, Plaintiff requests leave to amend rather than dismissal with prejudice.

Plaintiff further requests all other relief to which she may be entitled.

Respectfully submitted,

**/s/ Brian D. Wilcox**

Brian D. Wilcox
State Bar No. CA 244096
State Bar No. TX 24153547
Brian D. Wilcox Law, PLLC
Southlake, Texas 76092
Telephone: 949-533-7530
Email: Brian@BrianDWilcoxLaw.com

ATTORNEY FOR PLAINTIFF